(No. 45625.

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(George F. Morfey, Appellee.)

*Opinion filed October 1, 1973.*

JAMES J. COSTELLO, TIMOTHY O. MADIGAN and WARREN H. GLOCKNER, of Urbana, for appellant.

CHARLES W. HENDRIX, of Champaign, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, George F. Morfey, filed an application for adjustment of claim before the Industrial Commission for an injury he sustained which arose out of and in the course of his employment with appellant, the Board of Trustees of the University of Illinois. The arbitrator entered an award for claimant finding that the injury rendered him completely disabled and wholly and permanently incapable of work pursuant to section 8(f) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1967, ch. 48, par. 138.8(f).) The Commission confirmed the award. On *certiorari* to the circuit court of Champaign County the Commission's decision was affirmed, and this appeal follows. The sole issue presented for review is whether the Commission's decision as to the extent of disability resulting from the accident was contrary to the manifest weight of the evidence.

Claimant, who was 59 years old at the time of the accident, testified before the arbitrator that on June 18, 1969, he was employed as a janitor at the University of Illinois, Champaign campus, and had been so employed for two years. On that day he was working in a residence hall

moving large dining tables which he estimated to have weighed about 80 to 100 pounds each. These tables had been placed in a stack and, as he was moving them, the top table fell about 8 feet and struck him in the lower portion of the back causing him to fall. Claimant was taken by ambulance to McKinley Hospital where X rays were taken and he apparently received other medical attention. Although he said his back hurt, he returned to work after being released from the hospital several hours later but was instructed by his foreman, who witnessed the accident, to go home. The following morning claimant said he went to work and maintained his employment on an intermittent basis for several weeks after which he was unable to continue.

Claimant further testified that he presently experienced pain and that his legs did not function properly. He admitted that he had suffered a prior injury to his back while playing football in 1930. The resulting condition eventually required surgery. However, he said that his work at the university prior to the incident was on a regular basis and was performed without complaints against him. He also stated that he had experienced an ulcer problem which required surgery.

Dr. Ronald Rumer, an orthopedic surgeon, testified on behalf of the claimant. He stated, by way of deposition, that he had examined claimant in March, 1971. He noted that claimant was wearing a rigid chairback brace and moved with difficulty. Tenderness was noted in the midline between the fifth lumbar spinous process and the sacrum. Dr. Rumer said that X-ray examination indicated that claimant had a "spondylolisthesis at the fifth lumbar vertebra, actually a spondylolysis." He described both these conditions as an interruption of bone continuity in the pars-interarticularis (neural arch). The difference, he explained, was that in spondylolisthesis the defect permits the forward slippage of the vertebra involved along with the vertebra above it. Spondylolysis is a defect present in the neural arch in which the displacement of the vertebra

has not occurred. This defect is visible from X-ray examination. He was of the opinion that the defect was acquired rather than congenital and probably existed prior to the accident. He said that spondylolisthesis could be nonsymptom producing or symptom producing depending on the condition of the fiber cartilage between the two parts of the neural arch. He explained that a condition might become symptomatic, as was claimant's, due to a force which would produce distortion between the two bone parts of the arch. If stress was placed on the fiber cartilage between these points continuous swelling might result which could only be detected by surgery. This swelling would cause pain.

Dr. Rumer further testified that at the time of his examination he believed that claimant was unable to engage in manual labor. He said that if "conservative" treatment did not alleviate the difficulty then a deep compression laminectomy might be recommended, and if the latter was unsuccessful a spinal fusion would be required. However, if none of the aforementioned courses of treatment was successful, claimant's condition would not improve.

In response to a hypothetical question encompassing the facts in evidence, Dr. Rumer testified that a causal relationship could exist between claimant's condition and the incident in question. He said that such an accident might cause spondylolisthesis or aggravate a pre-existing condition. He based his opinion on the duration of the problem after the incident as compared to prior complaints of back pain and the method by which the condition became symptom producing. He admitted that claimant's present overall condition might not entirely be caused by the accident but merely that claimant's back condition was sufficient to render him incapable of work.

The other physicians testified by deposition on behalf of the appellant. Dr. Orville Bonnett, a practicing physician who had attended claimant for ten years beginning in

1960, stated that claimant had back pain in 1962 which this physician believed originated from a muscle spasm caused by poor posture, possible arthritis and nutritional deficiency. He recalled that on several other occasions prior to the accident claimant had complained of such pain. Dr. Bonnett then described claimant's intestinal problems in 1960 which required surgery for a perforated duodenal ulcer. He attributed many of claimant's subsequent complaints of gastrointestinal pain to his alcoholism.

In October, 1969, claimant went to Dr. Bonnett concerning his back and abdominal pains. Dr. Bonnett said the complaint of back pains was similar to those made prior to the accident. He described claimant as being dissatisfied with the treatment given him by university physicians. He was briefly hospitalized at this time and X rays were taken which indicated, *inter alia,* spondylolisthesis with anterior displacement of the fifth lumbar area. Dr. Bonnett described this condition as a congenital malformation in which supports of the last lumbar vertebra, as it connects with the sacrum, are improperly formed, permitting the vertebra to slide forward. He said that this may or may not cause pain.

Dr. Walter Peterson, an orthopedic surgeon, examined claimant, who complained of back pain beginning in July, 1969. His initial examination revealed tenderness in the right lumbrosacral region. X rays confirmed that at this time claimant had spondylolysis and spondylolisthesis. He defined spondylolisthesis as a defect in the pedicles of the vertebra permitting it to slip forward. Spondylolysis was described as a degeneration of the spinal joint and this condition is visible on X rays in many instances, as was claimant's. Dr. Peterson said that the accident did not cause spondylolisthesis. He further stated that claimant's intestinal problems, which predated the accident, could cause back pain.

On cross-examination this witness reiterated his position that claimant was having little difficulty due to his

back condition or the injury. Claimant's counsel then questioned Dr. Peterson as to letters he had written to another physician in September, 1969, and March, 1970. In the former this witness apparently stated that claimant could not return to work unless surgery was performed. The latter indicated that claimant's work responsibility should be terminated and advised that the best course of treatment was medication. Dr. Peterson sought to explain the substance of these communications by stating that claimant's overall physicial condition was more of an overriding factor in his determination of claimant's ability to return to work and that his generally deteriorated physical status was causing claimant's pain. He said surgery at the present time was not recommended. However, he admitted that initially he thought that the accident might have aggravated a pre-existing condition and that his present opinion was influenced by his lack of confidence in claimant, which was occasioned by claimant's excessive use of medication, alcoholic propensity and attempt to affect symptoms during an examination.

Dr. Fred Sukkar, an orthopedic specialist, examined claimant in January, 1970, and said that he complained of constant low back pain. Dr. Sukkar said that at this time claimant staggered into the room and had a strong odor of liquor on him. This physician expressed the view that claimant was not cooperating during the examination. Based upon the X rays this physician stated that claimant had spondylolisthesis of the fifth lumbar vertebra and slight degeneration in this area was also noted. He said that spondylolisthesis was a defect in the neural arch preventing the vertebra from being properly anchored by the pedicles which resulted in vertebra slippage. He was of the opinion that the spondylolisthesis, which he thought to be an acquired defect, was not caused by the accident but rather existed prior to this occurrence and that the claimant's disability was not caused by the accident because spondylolisthesis would not remain symptomatic for such a long

period. However, he then conceded that trauma could cause such a pre-existing condition to become symptomatic and that the accident might have been causally connected to claimant's condition at the time he examined claimant. This physician believed that a spinal fusion might be helpful although any attempt to predict a result would be conjectural.

On review before the Commission additional depositions and X-ray exhibits were introduced. Dr. Marion Kinzie, a staff physician at McKinley Hospital and associate director of appellant's health service, examined claimant on several occasions between August and October, 1969. He confirmed that claimant had spondylolisthesis which he described as a congenital defect of the neural arch. This witness said that claimant mentioned his back pain but was given permission to return to work. However, less than two weeks later claimant was relieved of his duties after he complained of this pain and abdominal ailments. Dr. Kinzie said that an injury to fiber cartilage would result in back pain but the existence of this injury could only be detected by surgery.

Dr. Irving Weissman, a radiologist, examined various sets of X rays taken on the day of the accident and subsequent thereto. He noted that claimant had a condition of spondylolisthesis and that the various X rays depicted no great change in the neural arch which was otherwise normal.

Appellant now contends that all the medical experts are agreed that the spondylolysis or spondylolisthesis existed prior to the date of claimant's injury. It argues that the critical question is whether the accident aggravated this condition to the extent that claimant is now permanently and totally disabled. To support its position that the Commission erred in this finding, appellant relies on the testimony of Dr. Peterson, who stated that the disability was not related to the accident; the testimony of Dr. Bonnett that claimant's complaints of pain were similar to

those that preceded the accident, and the testimony of Dr. Sukkar that he found it difficult to believe the condition would remain symptomatic for such a lengthy period of time.

It is within the province of the Industrial Commission to resolve the factual question as to whether a claimant is permanently disabled, and its decision will not be set aside unless contrary to the manifest weight of the evidence. (*Bell and Gossett Co. v. Industrial Com., 53 Ill.2d 144, 149; South Import Motors, Inc. v. Industrial Com., 52 Ill.2d 485, 489.*) And where, as here, there may exist conflicting medical testimony as to the extent of disability resulting from the injury the same standard is applicable. *Saldana v. Industrial Com., 53 Ill.2d 222, 225; Hartwell v. Industrial Com., 51 Ill.2d 562, 565.*

The testimony of Dr. Sukkar, upon which appellant relies, must be considered in view of his later testimony in which he said that a traumatic occurrence may have rendered claimant's pre-existing condition symptomatic and his reluctant concession that such an accident might have been causally related to claimant's condition. Dr. Peterson's testimony is also qualified by his opinions expressed in his prior communications and certain factors which influenced his present evaluation. The judgment of Dr. Bonnett as to the nature of claimant's complaint of back pains must be viewed in the light of claimant's satisfactory employment record prior to the accident and his inability to work shortly thereafter. We believe that this analysis, when compared to the testimony of Dr. Rumer, merely establishes a reasonable question of expert medical opinion and from review of the record we cannot say that the Commission's decision was contrary to the manifest weight of the evidence.

Appellant, however, seeks to discredit Dr. Rumer's opinion by asserting that its basis is contradicted by the testimony of Dr. Weissman. Appellant argues that Dr. Rumer's theory was premised upon a distortion of the

bones in the neural arch which Dr. Weissman said were in normal position in X rays taken after the accident. It must be recognized that no evidence was presented to compare the position of this structure prior to the accident. Moreover, it was basically Dr. Rumer's belief that stress placed upon the fiber cartilage by an injury, which was not discernible by X ray, could cause pain, and this theory was supported in substance by Dr. Kinzie. We therefore find that this contention is unpersuasive.

Finally, appellant maintains that claimant's other medical problems adequately explain his inability to work. Dr. Rumer's opinion was that the accident in question was sufficient to render claimant incapable of work and this evaluation was made even after he had considered the other factors which may have affected claimant. This issue again presents a determination based upon differing medical views and we do not find the Commission's decision improper.

Accordingly, the judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*