(No. 51862

INLAND ROBBINS CONSTRUCTION CO., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Otha Griffin, Appellee).

*Opinion filed January 23, 1980.*

Galliani & Kuzel, Ltd., of Chicago (William R. Galliani, of counsel), for appellant.

O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., and Vitell, Greenfield, Johnson & Goldstein, Ltd., both of Chicago (Peter B. Carey, Laura Di Giantonio & Phillip J. Johnson, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded claimant, Otha Griffin, compensation based upon a finding of permanent total disability resulting from injuries arising out of and in the course of his employment by respondent, Inland Robbins Construction Co. The Industrial Commission affirmed, and the employer appeals from confirmation of the award by the Cook County circuit court. The sole issue is whether the finding of permanent and total disability is contrary to the manifest weight of the evidence.

On July 24, 1975, claimant, who was employed by Inland as a construction worker, fell from a scaffold onto a concrete floor approximately 8 feet below, landing on his back. Initially, he did not think he was hurt, but when he tried to resume work he felt a sharp pain in his back. Claimant was then taken to the Southwest Industrial Clinic, where he was examined and told to return the following morning. The examining physician, Dr. James Boscardin, subsequently hospitalized claimant and kept him in traction for one week.

After his discharge the pain did not subside, and claimant was hospitalized again on September 27 for treatment of a herniated disc resulting from the fall.

Following a myelogram and an electromyography, Dr. Boscardin suggested surgery for the herniated disc, but claimant preferred to continue conservative treatment. The pain increased, however, and he was rehospitalized. Dr. Boscardin performed a laminectomy on October 31, but he was unable to remove a large bony spur infringing on the nerve root and disc.

The operation did, however, reduce claimant's pain, and Dr. Boscardin was optimistic about claimant's condition. He continued to treat him after his discharge from the hospital until the end of July 1976. When claimant was released to return to work the doctor placed limitations on lifting and pulling and also indicated that claimant should wear a back brace. The doctor also thought claimant had a permanent partial loss of use of his right leg.

During the course of the subsequent hearings before the arbitrator and the Commission, claimant presented the testimony of Dr. Irwin Barnett, who had examined him three times. Dr. Leo Markin and Dr. James Milgram, each of whom had examined claimant once, were called by the employer. Dr. Barnett had also referred to claimant's hospital records, but neither Dr. Markin nor Dr. Milgram had done so. While disagreeing as to the extent of claimant's physical disabilities, all of the doctors agreed that he could not do the type of heavy work he had previously done. Dr. Barnett diagnosed claimant as having a herniated disc syndrome and a flattening of the third lumbar disc space. Based on the results of his examinations, which commenced a year after the surgery and continued for a year and a half, Dr. Barnett concluded claimant was incapable of holding down any permanent job. The doctor thought claimant might be able to do some work for a limited time if it did not involve lifting, bending beyond his capabilities, or prolonged walking, but that he would also have to have rest periods every 45 to 60 minutes. In the doctor's opinion, however, the buildup of pain and tension in claimant's back and legs would prevent him from working at such a job for a long

period of time. Dr. Barnett's observations indicated that claimant's condition was deteriorating and that he suffered a major loss of the use of both legs.

Neither Dr. Markin nor Dr. Milgram considered Griffin's condition that serious. Their measurements of the mobility of Griffin's back and legs indicated a considerably greater range of motion than those of Dr. Barnett. Both also thought that inconsistencies in some of the measurements indicated claimant was simulating a greater injury than he actually had. On cross-examination Dr. Barnett had testified that he had performed unspecified malingering tests on claimant but that the results were negative. Although both Dr. Markin and Dr. Milgram conceded that the mobility of claimant's back and legs was less than normal, both thought he could perform light duties such as driving a taxi cab, operating an elevator or working as a crossing guard or elevator operator.

Claimant and his employer also jointly submitted a medical report by Dr. Prem Pahwa. That report indicated some loss of mobility in both the back and legs with considerable pain in the back radiating into the legs, primarily the right leg. Dr. Pahwa thought these results were residual symptoms from the laminectomy which could be helped with conservative treatment in a hospital.

Claimant testified that he had pain in his back which radiated into his legs. When he walked more than two blocks his right leg gave out, and if he sat for very long he developed a burning pain in his lower back and his leg started to tremble. He had tried to help his wife at home once by putting wax on the floor with a mop, but the pain in his back became so severe that he had to be taken to the emergency room at Cook County Hospital for alleviating drugs. The emergency room personnel had also referred him to a clinic which suggested hospitalization, but he did not want to enter a hospital again.

At the time of the accident claimant was 29 years old with a sixth-grade education but did not read or write very well. He had been employed by respondent for

approximately one year as a construction worker shoveling concrete and carrying heavy boards. Previously he had worked as a laborer in a steel warehouse but he had never held any skilled jobs or worked on an assembly line. When Dr. Boscardin released him for work, claimant inquired of Inland about obtaining work, explaining the limitations Dr. Boscardin had imposed, but he was told that no work was available for him. Subsequently he applied for work at International Harvester, Dutch Boy Paint Company, and another company without success. The first time he tried to apply to International Harvester they were not accepting applications, but on subsequent occasions they did accept his applications. On all the applications he explained his physical limitations and applied for any work available.

The controlling principle in workmen's compensation cases is that the Commission's action will not be disturbed unless contrary to the manifest weight of the evidence. (*National Lock Co. v. Industrial Com.* (1979), 75 Ill. 2d 259, 264; *Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293, 300; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 43.) Such is not the case here. Although the medical evidence concerning the extent of claimant's incapacity was contradictory, all of the doctors expressing an opinion agreed that he could not do the type of heavy work he had previously done. An employee need not be reduced to total physical incapacity in order to be permanently and totally disabled from work. Rather, an injured employee is totally disabled when the only services he can perform are "so limited in quantity, dependability, or quality that there is no reasonably stable market for them." (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 488-89.) The Commission, from an evaluation of the evidence concerning the claimant's injury, the nature of his employment, his age, experience, training, capabilities and un-

availing attempts to find work, could have legitimately concluded that claimant, although not totally physically incapacitated, nevertheless was incapacitated to the point that he was totally unable to secure permanent employment. (2 A. Larson, Workmen's Compensation sec. 57.51, at 10—109, sec. 57.61, at 10—136, 10—137 (1979); *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362; *Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 320; *Springfield Park District v. Industrial Com.* (1971), 49 Ill. 2d 67, 73.) The employer could have rebutted that conclusion by showing that work within the employee's limited capacities was reasonably available. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362-63.) No effort was made to do so.

We accordingly affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*