(No. 52650.—

EDWARD MORGAN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Progress Industries, Appellee).

*Opinion filed November 18, 1980.*

Scheele, Serkland & Boyle, Ltd., of Chicago (A. G. Scheele, James C. Serkland and Deborah H. Collander, of counsel), for appellant.

Harlan Heller, Ltd., of Mattoon (Harlan Heller and Brent D. Holmes, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Edward Morgan, filed an application for adjustment of claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138 *et seq.*) on the basis of injuries to his right leg. The arbitrator found that the injuries sustained caused 20% permanent and complete loss of use of the right leg and also awarded compensation for 15 weeks of temporary total incapacity for work. The Industrial Commission heard additional evidence and affirmed the decision of the arbitrator, modifying it to increase the permanent and complete loss of the use of the right leg to 33 1/3%. The circuit court of Coles County confirmed the decision of the Commission and claimant

appealed directly here, urging that an award for less than permanent and total loss of use of the right leg is contrary to the manifest weight of the evidence.

The parties stipulated before the arbitrator that claimant was the employee of Progress Industries (Progress) on July 7, 1976, when he sustained accidental injuries which arose out of and in the course of that employment. Only the claimant and Progress' vice-president of industrial relations testified before the arbitrator, although certain letters or reports from doctors and hospital records were introduced into evidence. Claimant testified that, while he was working for Progress in Arthur, a metal "pattern" which weighed 400 to 500 pounds fell from a suction cup and struck his lower right leg. He testified on cross-examination that he had suffered from varicose veins in his legs for a number of years before the accident and that he had received a veteran's benefit because of his legs since 1945. After the accident the claimant was treated by Dr. Messmoor (whose opinion is not in evidence) and then worked for two days. When the pain in his leg worsened, claimant discontinued work, was again treated by Dr. Messmoor, but eventually went to the emergency room of a Mattoon hospital. He was then hospitalized under Dr. Anton Dippold's care, and apparently has not worked since.

The medical evidence presented to the arbitrator included a report by Dr. Dippold, who had treated claimant from the time of his hospitalization on or about July 22, 1976, to October 8. He was of the view that claimant was no more disabled after the accident than he had been before it. He suggested that a vascular specialist be consulted if claimant were to claim disability based on the condition of the varicose veins prior to the accident. When he last saw claimant on October 8, Dr. Dippold released him to return to work October 25.

Dr. J. R. Mallory, who saw claimant on October 25,

concluded in his report that claimant was then totally disabled, noting "progressive disability relative to the lower extremities." There is, however, nothing in the record indicating Dr. Mallory knew of the accident, and his letter makes no reference to any causal connection between the disability and an injury.

Dr. Jack Cooley examined claimant on March 28, 1977. He was of the opinion that claimant was then totally disabled. Dr. Cooley's somewhat ambiguous letter can be read to imply either that the disability had resulted from the injury to the right leg or that the disability resulted from degeneration of varicose veins in both legs independently of the accident.

This court has often stated that the Industrial Commission is to determine the nature and extent of the employee's disability, drawing reasonable inferences from the evidence, including the medical evidence. That determination will be upheld, particularly in the presence of conflicting medical opinions, unless it is contrary to the manifest weight of the evidence. *United Airlines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85; *Inland Steel Coal Co. v. Industrial Com.* (1980), 81 Ill. 2d 61; *Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277.

Clearly there is conflict here in the medical evidence relating to the issue of causation. Dr. Dippold believed that there was no more disability after the accident than had existed before it. Dr. Cooley's letter was unclear as to what had caused the total disability he found, although he did state that the accident had caused "increased disability." Dr. Mallory did not relate the disability to the accident.

There was also disagreement as to the extent of disability. Dr. Dippold believed that there was no disability in October 1976 and ordered claimant back to work. Dr. Mallory apparently believed claimant totally disabled at that time, and Dr. Cooley was of the opinion that claimant

was totally disabled when he was examined in March 1977.

There is disagreement, too, in the medical findings. Dr. Dippold found no inflammation of the varicosities. Dr. Mallory found changes in pigmentation, bilateral varicosities with no dependent edema, and diminished but adequate peripheral pulsation. Dr. Cooley found tenderness, bilateral pretibial edema, stasis dermatitis, pigmentation and chronic venous insufficiency of both legs. With respect to the right lower leg, he also found stasis cellulitis and more severe stasis dermatitis and pigmentation. In addition he noted adequate pulses in both legs and evidence of many years of venous insufficiency, including leg scars from previous surgery.

There may be several reasons for the Commission's decision. It may have rejected Dr. Cooley's opinion of total disability or may have read his report to say that the total disability he saw in March 1977 was the result of natural degeneration of both legs, independent of the accident. It may have rejected Dr. Mallory's opinion and given weight to Dr. Dippold's opinion that the claimant had not been totally disabled in October 1976. The Commission may have relied on the arbitrator's and commissioner's examinations of the leg. Whatever the reason, it is apparent that sufficient conflict in the evidence existed to preclude a finding that the award of compensation for the permanent and total loss of one-third of the use of claimant's right leg is contrary to the manifest weight of the evidence.

The judgment of the circuit court of Coles County is accordingly affirmed.

*Judgment affirmed.*