(No. 53130.—

RUTH E. ZARLEY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (P. A. Bergner & Co., Appellee).

*Opinion filed March 18, 1981.*

382

Elmo E. Koos, of Peoria, for appellant.

Arthur R. Kingery, of Strodel & Kingery, Assoc., of Peoria, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This workmen's compensation case involves an appeal by the claimant, Ruth E. Zarley, from an order of the circuit court of Peoria County confirming a decision of the Industrial Commission. (See 73 Ill. 2d R. 302(a).) There is no dispute that the employee suffered an accidental injury arising out of and in the course of her employment with respondent, P. A. Bergner and Co. The only issue on appeal is whether the Commission's findings as to the nature and extent of the injury are contrary to the manifest weight of the evidence.

Claimant worked as a pricing clerk in respondent's warehouse. She struck her head in the right temple area on a metal frame suspended from an overhead monorail at work on June 3, 1977. As a result of this accident she suffered a concussion and post-traumatic headaches. The arbitrator awarded 46 5/7 weeks for temporary total disability, reserved ruling on permanent disability, as authorized by section 19(b) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(b)), and allowed $412.50 in unpaid medical expenses for services rendered to date by Dr. Frank Benningfield, a chiropractor. On review, the arbitrator's decision was set aside and the Commission awarded 34 4/7 weeks compensation for temporary total disability, assessed permanency at 8% of the person as a

whole, and retained the aribtrator's order for the payment of $412.50 for Dr. Benningfield's services even though his unpaid bill was in excess of $1,600 at the time of the hearing before the Commission. The circuit court of Peoria County confirmed the decision of the Commission. Claimant has appealed, insisting that the Commission cannot award compensation for some but not all of Dr. Benningfield's treatments and that since the only additional medical evidence on review was the testimony of Dr. Benningfield, the Commission's failure to adopt his "unrebutted" opinion that claimant is totally and permanently disabled was contrary to the manifest weight of the evidence.

We find that the Commission's decision has ample support in the record and is not against the manifest weight of the evidence. Consequently, we affirm the circuit court.

While the number of medical reports renders this case confusing, we will attempt to summarize the findings and conclusions of the several doctors involved. On the day of the accident, claimant was taken to Proctor Community Hospital for emergency treatment, where X rays revealed no evidence of a skull fracture. She was sent home with instructions to take aspirin "as necessary." On June 4, 1977, she contacted her family physician, Dr. Leonard Favus, complaining of headaches, dizziness, and light-headedness. She was seen by Dr. Favus again on June 4, 7 and 10, each time with similar complaints. She was put on pain medication and told to "take it somewhat easy." On June 16, 1977, claimant was admitted to the Methodist Medical Center by Dr. Favus, who felt she was suffering from a cerebral concussion with post-traumatic headaches. After several days of tests, which included a brain scan, Dr. Favus discharged the patient on June 21, 1977, concluding "[h] er brain scan and other findings are essentially normal and [it is] probably just a matter of time before

she gets rid of her headaches." The headaches persisted, and blurred vision of the right eye developed. Dr. Favus concluded in a letter dated September 9, 1977, that while the patient continued suffering post-traumatic headaches, no permanent disability would result.

Dr. Bruce Ehmke examined claimant in August of 1977. In a report dated August 9, 1977, Dr. Ehmke noted that the patient no longer complained of blurred vision and exhibited full range of motion of her neck. No reason to prevent her from returning to work was found. Dr. Ehmke was also of the opinion that claimant had suffered a mild concussion and that her post-concussion symptoms would clear up without permanent residual effects.

Dr. Jack Domnitz saw claimant in November 1977. Although pain and limited range of motion of the neck were found earlier, by November 29, 1977, physical therapy had restored the patient's full range of motion and a return to work was authorized. Claimant worked on December 1, 2, and 5, but returned to Dr. Domnitz on December 12, 1977, complaining once again of headaches. The pain and stiffness in her neck returned following an automobile accident on December 23, 1977.

Dr. Domnitz referred claimant to Dr. Ernest Adams for evaluation and therapy. Dr. Adams noted that claimant "is also developing a traumatic anxiety tension state." He concluded on February 1, 1978, that there appeared to be no reason why she should not be returned to work.

Dr. Lalit Savla, a neuropsychiatrist, examined the patient in February of 1978. His report concluded that she was capable of resuming her job while following a home therapy program suggested by Dr. Adams.

Claimant next sought the services of Dr. Frank Benningfield, a chiropractor. He examined the patient on February 10, 1978. After reciting his subjective and objective observations, his report concluded that she was totally disabled at that time and unable to perform even minimal

household activities.

Based upon this evidence, the arbitrator made the award previously referred to. At the hearing before the Industrial Commission, Dr. Benningfield testified personally and at length concerning the treatments he had given and the numerous things that he found to be wrong with the patient's spine. In response to questioning, Dr. Benningfield expressed the opinion that claimant was totally disabled as a result of her accident and that the disability had become permanent. Further, he felt that there was a causal connection between the accident on June 3, 1977, and the problems for which she was currently receiving treatment.

The determination of the nature and extent of an employee's injuries arising out of and in the course of employment is a factual question to be determined by the Industrial Commission. (*Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 270; *Hiram Walker & Sons, Inc. v. Industrial Com.* (1978), 71 Ill. 2d 476, 479.) In making that determination, the Commission has original jurisdiction and may review all the evidence. Regardless of whether the Commission hears additional evidence, it is in no way bound to accept the findings of the arbitrator. (*American Smelting & Refining Corp. v. Industrial Com.* (1958), 13 Ill. 2d 275, 279-80; *J. J. Grady Co. v. Industrial Com.* (1970), 46 Ill. 2d 471, 473; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 239.) The findings of the Industrial Commission will not be disturbed unless contrary to the manifest weight of the evidence. *Morgan v. Industrial Com.* (1980), 82 Ill. 2d 524, 527; *Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275.

In the case now before us, no less than five doctors reached the conclusion that claimant's symptoms would clear without any permanent residual effects. Four of the six doctors testifying concluded that claimant could return

to work. Dr. Benningfield was the only expert who was of the opinion that the patient was permanently and totally disabled. Claimant herself testified at arbitration that, while the headaches persisted, she was "starting to feel a lot better." Clearly, a reasonable and therefore permissible inference to be drawn from this evidence is that the claimant has not suffered permanent and total disability. Permissible inferences will not be disregarded or set aside merely because other inferences might be drawn from the same evidence. *Gladstone v. Industrial Com.* (1980), 79 Ill. 2d 236, 240.

We are not persuaded that the opinion of Dr. Benningfield overcomes the other evidence in this case merely because it was based upon the most recent examination of the claimant. The time of a medical examination is only one of a number of factors which the Commission may consider when evaluating the opinion of an expert witness. The Commission was not bound to accept the opinion of Dr. Benningfield to the exclusion of the other evidence. Dr. Benningfield's testimony simply created a conflict in the opinions of the experts. It is primarily within the province of the Industrial Commission to resolve conflicting medical testimony. (*National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, 54; *Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293, 300.) Based upon all of the evidence we find that the decision of the Commission assessing the claimant's loss as 8% of the person as a whole was not contrary to the manifest weight of the evidence.

A somewhat different problem is posed by the fact that the Industrial Commission cut off temporary total disability payments as of February 1, 1978, but allowed $412.50 for unpaid medical expenses incurred by reason of Dr. Benningfield's treatment which began on February 10, 1978, and whose bill had reached this amount on April 24, 1978, the date of his last treatment of the claim-

ant before the arbitrator's hearing.

The arbitrator's hearing concluded on April 26, 1978, and the arbitrator's award for medical expenses and temporary disability was computed to April 27, 1978. Claimant contends that the failure of the Industrial Commission to continue temporary disability payments after February 1, 1978, while at the same time making an award for unpaid medical expenses incurred after that date renders its decision internally inconsistent and requires that it be reversed. We do not agree. In *Quick v. Industrial Com.* (1972), 53 Ill. 2d 46, this court affirmed the reversal of the Industrial Commission and the reinstatement of the arbitrator's award where the Industrial Commission's findings were logically inconsistent. In *Quick*, the Commission allowed temporary total disability payments for a period of time which included hospitalization for shoulder surgery allegedly necessitated by an industrial accident. However, no award was made for the cost of the surgery. This is a different situation from that present in our case where no temporary total disability was allowed but medical expenses were allowed for the disputed period. Our opinion in *Quick* stated:

> "Having allowed the employee temporary total disability compensation for the period of time he was hospitalized for surgery, it was inconsistent for the Industrial Commission not to also allow the employee medical expenses for the surgery." 53 Ill. 2d 46, 49.

The inconsistency referred to in *Quick* did not result from the mere fact that medical expenses were incurred during a period of temporary total disability. Rather, it arose because the Industrial Commission's award for this period could only have been predicated upon a finding that the shoulder injury was compensable under the Act. In this context it was inconsistent to conclude that the claimant was not entitled to an award for treatment of a

compensable injury.

In this case there is no similar inconsistency. Based upon the evidence, the Industrial Commission found that temporary total disability had ended on February 1, 1978, the date Dr. Adams stated that there was no reason why she should not return to work. Section 8(b) of the Workmen's Compensation Act provides for payment of compensation where temporary total incapacity results from an injury. (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(b).) In addition, an employee is also entitled to recover all medical expenses reasonably required to cure or relieve the effects of an industrial accident. (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).) A finding of temporary total disability is not a prerequisite of an award for medical expenses under section 8(a). Employees often suffer injuries that require medical treatment but do not result in temporary total disability or which are required after the disability terminates.

As noted above, an employee is entitled to recover only those medical expenses which are reasonable and causally related to an industrial accident. In *John v. Industrial Com.* (1980), 81 Ill. 2d 145, this court held that the Commission's denial of compensation for medical treatment given after the hearing at arbitration was not contrary to the manifest weight of the evidence where there was evidence from which the Commission could have concluded that the subsequent treatment was not causally related to the compensable injury. In this case the Commission apparently rejected evidence as to the need for further treatment introduced at the hearing on review, which consisted of testimony by claimant and Dr. Benningfield. The Commission may have been unwilling, however, to upset the $412.50 award for Dr. Benningfield's services since it was based upon the testimony of claimant, the only "live" witness appearing at arbitration. This court has recognized that questions as to the credi-

bility of witnesses are ordinarily best left in the hands of those who see and hear them testify, and that we can leave undisturbed the determination of the arbitrator and the Commission, who chose to believe the unimpeached and uncontradicted portion of claimant's testimony which would support the award for medical expenses. (*McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, 403.) The arbitrator's finding that Dr. Benningfield's treatments totaling $412.50 were reasonably required to relieve the effects of the injury sustained on June 3, 1977, is supported by claimant's testimony at arbitration that the treatments made her feel better. The fact that the Commission chose not to believe similar statements made concerning subsequent treatments does not require that the arbitrator's earlier finding be rejected. As a result, the Industrial Commission's decision with respect to the payment of $412.50 in unpaid medical expenses was not contrary to the manifest weight of the evidence and did not conflict with its other findings concerning disability. The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*