(No. 53525.—

VALLEY MOULD & IRON COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jose A. Munoz, Appellee).

*Opinion filed April 17, 1981.*

SIMON, J., concurring in part and dissenting in part.

Keith C. Hult, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Perry M. Laks, of Chicago (Goldstein, Goldberg & Fishman, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This workmen's compensation claim was filed by Jose A. Munoz (claimant) against the Valley Mould & Iron Company (employer) for injuries allegedly arising out of and in the course of his employment while working on the casting floor of a large metal-mold fabricating plant. On April 15, 1976, claimant suffered a stroke while performing his duties at work that resulted in partial loss of control over the right side of his face, right arm and leg, as well as a mild aphasia. The arbitrator entered an award of permanent total disability, which was affirmed on review by the Industrial Commission. On *certiorari* the circuit court of Cook County confirmed the award. The employer appeals to this court pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)), claiming that the Commission's finding as to causation was contrary to the manifest weight of the evidence, and that the claimant failed to meet his burden of proof with respect to permanent total disability.

While we find the Commission's holding on the issue of causation supported by the manifest weight of the evidence, we agree with the employer that the record in this case discloses that the award for permanent total disability is contrary to the manifest weight of the evidence.

The employer is in the business of casting iron for various uses by pouring the molten metal into molds. The scale of the operation is quite large, as evidenced by the fact that the molds in question, once they are assembled and ready to be filled, range from 6 to 10 feet in height and weigh anywhere from 5 to 30 tons. Each of two shifts on the casting floor produces between 28 and 32 castings per day.

Claimant was originally employed on September 22, 1972. Between that time and the date of the accident, he worked at various tasks in the casting department, all of them requiring heavy physical labor but none of them

requiring any particular skill. At the time of the accident, claimant was working as a "skimmer." His job was to remove impurities from the molten iron by "skimming" them off of the molds after they had been poured. This task is performed by repeatedly stroking the L-shaped end of a three-fourths-inch-diameter steel rod approximately six to seven feet long across each mold, thereby removing the impurities that have floated to the top. During all phases of the actual casting process, including "skimming off," everyone on the casting floor is required to wear asbestos trousers, asbestos jackets, hard hats with face shields, and asbestos gloves. These items of protective clothing are worn on top of and in addition to the employee's regular work clothes.

On April 15, 1976, claimant began work at noon, which was the usual starting time for his shift. After working for approximately three hours to prepare the molds for that day, the pouring operation began, at which time claimant took up his position as a "skimmer." The outside temperature at this time was approximately 80 degrees Fahrenheit. The temperature in the building was much higher. After 4:30 p.m. claimant became ill. He continued to work for a time but was compelled to leave his work station and collapsed in the locker room. He was then taken to the intensive care unit of South Chicago Hospital in a semiconscious state, where he came under the care of Dr. A. Gutierrez.

Dr. Gutierrez transferred the patient out of intensive care on April 18, 1976. For the next several days claimant underwent a series of tests, including a brain scan and electroencephalogram. Dr. Gutierrez diagnosed the claimant's condition as resulting from a "tumor of the brain, left temporal lobe." The patient was discharged on April 24, 1976, and transferred to Michael Reese Hospital and to the care of Dr. Irving Sherman. Further testing at

Michael Reese showed abnormal results indicating an infarct on the left side of the brain. The presence of an aneurysm of the internal carotid artery was also noted. Claimant was released from Michael Reese on May 5, 1976, and has received no further treatment for his condition.

At arbitration, Dr. Nathaniel Greenberg testified on claimant's behalf. Based upon the medical records of both hospitals, as well as his examination of the patient, Dr. Greenberg was of the opinion that the patient had suffered a ruptured aneurysm of the left internal carotid artery, brought about by a marked rise in blood pressure due to the environmental conditions, as well as the strenuous nature of the patient's work. Dr. William Buckingham testified at arbitration for the employer. While he did not dispute that there had been an infarct to the left side of the claimant's brain, he stated that based upon the same medical records and his examination of the patient, claimant's condition was caused by the natural degenerative process of arteriosclerosis rather than a trauma-induced rupture of an aneurysm.

In addition to the medical experts, several witnesses, including claimant's foreman, testified. Their testimony established the working conditions at Valley Mould noted previously, as well as the fact that, despite his medical release to work in January of 1977, claimant has not been returned to work. The record is conflicting as to whether this was a result of a general economic slowdown that would have resulted in the claimant's layoff even if he had not been injured, or whether his "light duty" restriction rendered him unemployable in any capacity at Valley Mould. There was absolutely no testimony by any witness regarding the claimant's education, skills, or past employment. Claimant did testify, however, that he had not applied to any other place of employment for any type of

work. Upon this evidence the arbitrator entered an award of permanent total disability under section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)).

On review, the Commission heard the additional testimony of Dr. Nicholas Wetzel, who testified for the employer. Dr. Wetzel, a neurological surgeon, examined the claimant, reviewed the medical records, and upon that basis concluded that the claimant's condition was not caused by his work activities. Dr. Greenberg testified for the claimant and essentially restated his previous opinions, which were confirmed by an additional examination of claimant subsequent to the hearing at arbitration. The claimant also testified as to his present condition of ill health. He stated that he has not worked or applied for work anywhere since the hearing at arbitration. Once again, no evidence was produced concerning the claimant's education, skills, or prior employment. Based upon the record of the hearing at arbitration and the additional evidence on review, the Industrial Commission affirmed the arbitrator's award of permanent total disability.

We note at the outset the controlling principle of *all* factual questions in workmen's compensation cases: the findings of the Industrial Commission will not be disturbed unless they are contrary to the manifest weight of the evidence. (*Morgan v. Industrial Com.* (1980), 82 Ill. 2d 524, 527; *Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275.) Conjunctively, we consider that it is primarily within the province of the Industrial Commission to resolve conflicting medical testimony. (*National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, 54; *Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293, 300.) In the case at bar the causal connection between the claimant's condition and his work was not apparent from the fact of its occurrence. Claimant chose to show the relationship by introducing medical

testimony. The employer produced contrary medical evidence that created a conflict in the record regarding causation. Since *credible* evidence was introduced which could support either of two opposing propositions, the issue of causation became a factual question based upon conflicting medical testimony to be resolved by the Commission. Although the Commission chose to adopt the inference that claimant suffered a ruptured aneurysm of the left internal carotid artery due to the heat and stress of his job, that inference is a permissible one since it has support in both the opinion evidence and objective findings of the treating doctors contained in the record. Permissible inferences will not be disregarded or set aside merely because other inferences might be drawn from the same evidence. *Gladstone v. Industrial Com.* (1980), 79 Ill. 2d 236, 240.

In *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, this court reversed the Commission's finding that a stroke victim's work activities were causally related to her injury. In *County of Cook,* a 50-year-old woman with a history of hypertension and high blood pressure suffered a ruptured cerebral aneurysm when she rose from her chair at work in an office. We held there that, to be compensable, the injury must result from a risk to which, by reason of the employment, the injured employee is exposed to a greater degree than if he had not been so employed. (*County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 32.) In that case this court found that the work-connected activity subjected the employee to no greater risk than did many normal daily activities. The description of the working environment for an employee on the casting floor of Valley Mould and Iron set out earlier in this opinion clearly distinguishes this case from *County of Cook.* Having accepted the proposition that claimant suffered a ruptured aneurysm of the left internal carotid artery, and that a marked increase in blood pres-

sure brought on by the heat and stress of the employment could cause such a rupture, the Commission's conclusion regarding causation in this case was reasonable, if not compelled. The heat caused by working with molten iron, the need to wear heavy protective clothing, and the physical demands of the job itself exposed claimant to a much greater risk that a preexisting aneurysm would rupture as a result of his employment at Valley Mould than if he had not been so employed. Consequently, the Commission's finding of a causal relationship between claimant's work and his injury was not contrary to the manifest weight of the evidence.

In *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, this court considered the question of permanent and total disability within the meaning of section 8(f) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)). In *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 361-62, this court had stated:

"[A] person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists. [Citation.] Conversely, if an employee is qualfied for and capable of obtaining gainful employment without seriously endangering health or life, such employee is not totally and permanently disabled."

In determining whether an employee may perform any useful services, his age, training, education, and experience *must* be taken into account. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362.) The effect of *A.M.T.C.* was not to change the definition of permanent disability, as discussed in *E. R. Moore Co.,* or the factors to be considered in arriving at such a determination, but merely to allocate the burden of proof as between the employer and the injured employee. Under *A.M.T.C.,* if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to sup-

port a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the "odd-lot" category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market (2 A. Larson, Workmen's Compensation sec. 57.51, at 10—164.24 (1980)), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant (2 A. Larson, Workmen's Compensation sec. 57.61, at 10—164.97 (1980)).

In the case at bar, none of the medical experts testifying were of the opinion that claimant was permanently and totally disabled. They all agreed that he could return to some form of light physical work. The objective findings in the record indicate that he had a full range of motion in his right arm and leg despite the injury, although he had lost "some control and strength" in those limbs. Under these circumstances, the claimant could not be considered obviously unemployable. Since he had not made out a *prima facie* case that he fell in the odd-lot category, the burden remained upon him to show his inability to return to gainful employment. It was incumbent upon him to show that, considering his present condition, in light of his age, experience, training, and education, he is permanently and totally disabled within the definition stated in *Moore* set out above. This burden may be met by a showing of diligent but unsuccessful attempts to find work (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 490), or by proof that because of the above-mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273, 278; *Interlake Steel Corp. v. Industrial Com.*

(1975), 60 Ill. 2d 255, 259). Here, neither showing was made. The only evidence in this regard is that claimant is 45 years old, has worked at Valley Mould since 1972, and converses in Spanish rather than English. The record is devoid of any facts concerning his education or skills. Further, as noted earlier, he admitted that he did not apply for work anywhere other than at Valley Mould following the accident. This proof is not sufficient to sustain an award of permanent total disability.

Since the claimant in this case has failed to sustain his burden of proof, the judgment of the circuit court of Cook County must be reversed. We note, however, that during the proceedings before the Industrial Commission, claimant's attorney attempted to examine claimant regarding his education. Upon objection to counsel's question, the matter was dropped and not pursued any further. Consequently, the cause is remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE SIMON, concurring in part and dissenting in part:

I agree that claimant's injury was work related. I do not understand, however, why we cannot decide now whether the Industrial Commission properly determined that his injury leaves him permanently and totally disabled instead of remanding this case to the Industrial Commission for additional inquiry with attendant delay and more expense. The majority directs the Commission to take further evidence to determine either that claimant could with diligent effort find work within the range of his limited capacity or that no stable employment market exists for the kind of job claimant is now capable of holding. I think this is an unrealistic, useless and unnecessary exercise to which neither the claimant nor the Commission

should be put.

We are dealing here with a 45-year-old disabled laborer, who converses in Spanish rather than English. He is partially paralyzed and suffers from residual aphasia, an organic brain defect impairing his ability to express thoughts and ideas. His only work for at least the past 9 years has been extremely strenuous laboring jobs. He can no longer do that type of work. His own employer, Valley Mould, apparently has no other job suitable for him.

Claimant is handicapped in seeking another job by his language shortcomings, specialized work experience and physical problems. With the State of Illinois and the Chicago metropolitan area suffering, as they have for the past few years, from the greatest unemployment experienced in almost half a century, I would consider any success claimant, plagued by those handicaps, had, with even the most diligent of efforts, in finding a job a complete fluke.

The Industrial Commission implicitly found that there was no stable market for Munoz's skills when it found him to be totally and permanently disabled. In handling its day-to-day business the Commission is often forced to inquire into the employment market, and I believe that the Commission has some expertise in determining whether no stable market exists for claimant's skills. The evidence already in the record is enough to support the Commission's conclusion that the claimant is obviously unemployable at least in the labor market which currently exists and is likely to continue for the forseeable future. As I view it, directing the Industrial Commission to conduct further proceedings to determine whether there is a job somewhere for claimant would be a waste of time, effort and money.

If the majority were remanding the case to the Industrial Commission to ascertain a fact, I might view the majority's conclusion differently. But, what the majority

is remanding this case for is in reality an opinion of the Industrial Commission, a prediction about the likelihood that claimant can find a job he can physically perform. Who really knows?

Moreover, if the record is incomplete it is not the claimant's fault. When his counsel attempted to establish for the record what education he had, an objection interfered with this effort. If Valley Mould feels the record is incomplete without this information, it should not have interfered with the introduction of this evidence.

For these reasons I dissent from the portion of the decision which remands this cause to the Industrial Commission.