RELIANCE ELEVATOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Louis Todaro, Appellee).

First District (Industrial Commission Division)   No. 1—98—2105WC

Opinion filed December 20, 1999.

Robert J. Ambrose, Mark F. Vissa, and Julie L. Trester, all of Querrey & Harrow, Ltd., of Chicago, for appellant.

Bowman & Corday, of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Louis Todaro, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained while in the employ of Reliance Elevator Company (Reliance). Todaro was employed by Reliance as an elevator mechanic. On July 27, 1992, he was helping to move an extremely heavy motor up some stairs when he injured his low back and right shoulder.

The day after his accident, Todaro went to Northwest Community Hospital, where he was examined and X-rayed. Approximately one week later he was seen by Dr. Thomas Bruno for a follow-up. Around August 17, 1992, Todaro began undergoing physical therapy at Northwest Sports Rehabilitation. It was then that he noticed pain in his right shoulder in addition to continuing pain in his low back. On September 3, 1992, he was admitted to Northwest Community Hospital, where he underwent traction for his back and various diagnostic tests. An MRI revealed a large herniated nucleus pulposus at L4-L5, probably compressing the right L4 and L5 nerve roots. Dr. Bruno also diagnosed right shoulder tendinitis with the possibility of a torn rotator cuff.

On November 15 1992, Todaro returned to Reliance, where he did office work. On January 22, 1993, Todaro was examined by Dr. Marshall Matz at Reliance's request. Todaro indicated that he continued to have low back discomfort and intermittent pain in the upper right arm. Dr. Matz rendered no opinion on causation or Todaro's ability to work. Todaro was examined by Dr. Dwyer on January 26, 1993, again at Reliance's request. Todaro complained of low back pain and shoulder discomfort. Dr. Dwyer concluded that Todaro demonstrated impairment of the right shoulder consistent with a rotator cuff tear. Dr. Dwyer further concluded that Todaro could return to a sitting job, but that he would need surgical repair of the rotator cuff and rehabilitation.

Todaro worked through March 4, 1993, at which time he underwent an anterior decompression of his right shoulder and a repair of the rotator cuff. He was discharged on March 6, 1993, and began physical therapy. Todaro was released to return to work without restrictions on June 21, 1993. He went back to working on elevators, but avoided heavy lifting and carrying and was supplied with a helper. Nevertheless, on July 6, 1993, Dr. Bruno took Todaro off work because of increasing back pain. Todaro again underwent physical therapy. Another MRI revealed a right paracentral L4-L5 disc herniation.

Todaro was examined by Dr. Cooper on September 3, 1993, at Reliance's request. Dr. Cooper concluded that Todaro was capable of

performing light duties with no lifting over 35 pounds. On October 1, 1993, Dr. Bruno released Todaro to return to work with certain restrictions, including no excessive bending and no lifting over 30 to 50 pounds. Dr. Bruno also recommended job retraining.

Todaro contacted Reliance on a weekly basis requesting employment within his restrictions, but none was provided. On December 23, 1993, Todaro was contacted by Rehabilitation Consultants for Industry, Inc. (RCI), at Reliance's request, for assistance in obtaining alternative employment. Todaro requested retraining, but Reliance denied the request. The rehabilitation counselors were authorized to provide job placement services only. The initial rehabilitation evaluation plan and report, dated January 28, 1994, specifically stated that "an employer visit was not conducted due to the fact that instructions state that there will be no return to work with the insured." All subsequent reports, titled "Return to Work Prognosis," state "modified duty, new employer." In June 1994, Todaro contacted Reliance and requested any type of work, but was advised nothing was available. Under the direction and supervision of the rehabilitation counselor, Todaro began a job search. On June 28, 1994, Reliance advised the rehabilitation counselor to close his files, and no further rehabilitation services were provided to Todaro. Todaro continued his job search activities, contacting over 3,600 potential employers by the date of arbitration. No positions were made available to him, however.

In February 1994, Edward Steffan, a certified rehabilitation counselor, began to work with Todaro in order to find him a job. Steffan reviewed Todaro's medical records, vocational testing results, RCI's reports, and the job search logs and met with Todaro. Steffan concluded that Todaro had limited physical abilities that would allow him to perform limited vocational activities and had marginally transferrable skills that could be utilized by a prospective employer. Steffan concluded, however, that, given Todaro's age, education, work history and experience, level of transferrable skills, and in light of his extensive but unsuccessful job search, Todaro was not placeable. Steffan further opined that, given Todaro's age, he was not a candidate for retraining.

Todaro was reexamined by Dr. Dwyer on June 16, 1994. Dr. Dwyer found no objective evidence of any disability or impairment of the lumbosacral spine and a slight limitation in the range of motion in the right shoulder. Dr. Dwyer concluded that Todaro could return to his work duties without restriction.

In May 1995, Todaro was examined by Dr. Irwin Barnett. He complained of persistent low back pain and constant pain and stiffness in his right shoulder. Based upon his examination, Dr. Barnett

concluded that Todaro's condition was causally related to his work accident. Dr. Barnett opined that Todaro would have difficulty with lifting, excessive bending, stooping or squatting, and raising his right arm above the shoulder. Dr. Barnett further opined that Todaro should be limited to sedentary work. Dr. Barnett also opined that Todaro had a "moderate" loss of use of the right arm and a "moderate" loss of use of the person as a whole.

On July 24, 1995, Reliance offered Todaro a job that provided full pay and benefits. The job involved delivering materials, picking materials up, identifying parts, and various other light duties. Todaro did not accept the position.

Arbitration hearings were held on July 13, 1995, and on September 7, 1995. The arbitrator found that Todaro had met his burden of demonstrating that he fell into the "odd-lot" category and was totally and permanently disabled. The arbitrator found that Todaro was 56 years old at the time of arbitration and had been employed as an elevator mechanic for most of his adult life. The arbitrator noted that Todaro's job was classified as heavy in nature and that it was physically quite demanding. The arbitrator also found that Todaro had undertaken an extensive job search, first under the direction and supervision of his rehabilitation counselor, and later on his own, but without success. The arbitrator noted that Steffan had testified that Todaro was not placeable and that Reliance presented no evidence to the contrary.

With respect to the job offer, the arbitrator concluded that it was "clear and obvious that such offer of employment [was] made solely to avoid liability under the Workers' Compensation Act, and not for the purpose of providing legitimate employment to [Todaro]." The arbitrator noted that the job offer had not been made until July 24, 1995, approximately one month after the initial arbitration hearing, and that prior to that date, Reliance had refused to offer any position to Todaro. The arbitrator also noted that while LaPorte, Reliance's president, had testified that the job first became available at the beginning of July 1995, Reliance had not offered it to Todaro in the weeks preceding the July 13, 1995, arbitration hearing and that a similar position had become available five to six months prior to the hearing but Reliance did not offer it to Todaro. The arbitrator additionally noted that the position in question was nonunion and normally compensated at $10 per hour, yet Reliance was offering it to Todaro at full union wages and benefits, a compensation package in excess of $44 per hour. The arbitrator found there to be no business or economic justification for this, but for avoidance of liability. Finally, the arbitrator noted that LaPorte admitted that this job might require some tasks that exceeded Todaro's restrictions.

The Industrial Commission (Commission) affirmed and adopted the decision of the arbitrator. The Commission's decision was confirmed by the circuit court of Cook County.

On appeal, Reliance argues that the award of permanent and total disability is contrary to the manifest weight of the evidence. Specifically, Reliance contends that there is no medical evidence that Todaro is permanently and totally disabled and that Steffan testified that Todaro was employable.

■ A person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists. *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n*, 77 Ill. 2d 482, 397 N.E.2d 804 (1979). The claimant need not, however, be reduced to total physical incapacity before a permanent and total disability award may be granted. *Interlake, Inc. v. Industrial Comm'n*, 86 Ill. 2d 168, 427 N.E.2d 103 (1981). In determining whether a claimant is employable, his age, training, education and experience must be taken into account. *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 376 N.E.2d 206 (1978). The Commission's resolution of the question of whether an employee is permanently and totally disabled will be upheld unless contrary to the manifest weight of the evidence. *Ceco Corp. v. Industrial Comm'n*, 95 Ill. 2d 278, 447 N.E.2d 842 (1983).

■ In *Valley Mould & Iron Co. v. Industrial Comm'n*, 84 Ill. 2d 538, 419 N.E.2d 1159 (1981), our supreme court held:

"Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation], then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation].

In the case at bar, none of the medical experts testifying were of the opinion that claimant was permanently and totally disabled. They all agreed that he could return to some form of light physical work. The objective findings in the record indicate that he had a full range of motion in his right arm and leg despite the injury, although he had lost 'some control and strength' in those limbs. Under these circumstances, the claimant could not be considered obviously unemployable. Since he had not made out a *prima facie* case that he fell into the odd-lot category, the burden remained upon him to show his inability to return to gainful employment. It

was incumbent upon him to show that, considering his present condition, in light of his age, experience, training, and education, he is permanently and totally disabled within the definition stated in *Moore* set out above. This burden may be met by a showing of diligent but unsuccessful attempts to find work [citation] or by proof that because of the above-mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists [citations]." *Valley Mould*, 84 Ill. 2d at 546-48, 419 N.E.2d at 1163.

■ In the present case, as in *Valley Mould*, there is no medical expert opinion that Todaro was permanently and totally disabled. Todaro therefore failed to establish a *prima facie* case that he fell into the odd-lot category and the burden remained on him to demonstrate that because of his age, condition, training, education, and experience, he is totally disabled within the definition of *Moore*. The record overwhelmingly demonstrates that Todaro met this burden. He testified to an extensive job search, contacting over 3,600 potential employers, but was unsuccessful in obtaining employment. Todaro contacted Reliance on a regular basis seeking employment but was not offered anything. Reliance offers no evidence to contradict Todaro's testimony with respect to either the extent or futility of his job search efforts.

In addition to Todaro's own efforts, RCI, the rehabilitation services provider selected by Reliance, was unable to secure employment for Todaro. Todaro underwent vocational training and complied with the program designed by RCI and began a job search under its supervision. Despite RCI's efforts, Todaro was unable to secure employment.

In addition to the job search, Steffan testified that Todaro was not placeable. Reliance contends that Steffan testified that Todaro was employable. Reviewing Steffan's testimony, however, reveals that Reliance takes this testimony out of context. Steffan testified that "from a skill level, Mr. Todaro is employable." Steffan went on the explain that while there were some employers looking for the skills that Todaro possessed, he would not get those jobs because of his age, education, and condition. Therefore while he was employable from a "skills perspective," as a practical matter Todaro would be unable to find gainful employment.

Reliance notes that Dr. Dwyer examined Todaro on June 16, 1994. Both times he concluded that Todaro could return to his normal work duties without restrictions. The Commission specifically found Dr. Bruno's opinions and conclusions to be more compelling than Dr. Dwyer's on the issue of Todaro's ability to return to work. As we have held, it is the province of the Commission to resolve conflicts in the medical evidence and its decision thereon will be upheld unless it is

contrary to the manifest weight of the evidence. *Steve Foley Cadillac/ Hanley Dawson v. Industrial Comm'n*, 283 Ill. App. 3d 607, 670 N.E.2d 885 (1996). Nothing in the record would support a reversal of the Commission's determination that Dr. Bruno was more credible.

With respect to the job offer made by Reliance, the record overwhelmingly supports the Commission's determination that it was a sham and designed to avoid liability under the Act. It was not offered to Todaro until after the initial arbitration hearing and was offered at a rate of compensation far higher than was economically justifiable. Reliance's repeated refusal to offer Todaro any employment prior to this offer, as well as RCI's records, clearly demonstrates that Reliance had no intention of bringing Todaro back to work. Reliance maintains that LaPorte testified without contradiction that the deliveryman job had only become available shortly before it was offered to Todaro and that he turned down a *bona fide* offer. Clearly, the Commission did not find this testimony credible. As with conflicts in the medical testimony, it is the province of the Commission to determine the credibility of the witness and determine the weight given to their testimony, and its determination thereof will not be set aside on review unless contrary to the manifest weight of the evidence. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 631 N.E.2d 724 (1994). Reviewing the record, it is clear that the manifest weight of the evidence supports the Commission's determination that the job offer was a sham. The Commission properly gave no consideration to this "offer" in reaching its conclusion that Todaro was permanently and totally disabled because it was not a *bona fide* offer but, rather, was designed to circumvent Reliance's responsibility under the Act. Such practice must be strongly discouraged and even condemned. Employers must not be allowed to defeat an injured employee's entitlement to a disability award by making sham job offers. To countenance such practice would severely jeopardize injured workers' abilities to obtain relief and would undermine the spirit and purpose of the Act.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.