(No. 56985.—

C. D. TURNER & SONS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Wayne Grisamore, Appellee).

*Opinion filed May 18, 1983.*

Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur (Daniel L. Gaumer, of counsel), for appellant.

Kenneth H. Holz, of Scheele, Serkland & Boyle, Ltd., of Chicago, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Wayne Grisamore, fell and injured his lower back while working as a pile-driver foreman for respondent, C. D. Turner & Sons, Inc. An arbitrator for the Industrial Commission, after finding that claimant was totally disabled and that the condition was temporary and had not yet become permanent, awarded compensation in the amount of $253 per week for a period of 82²/₇ weeks under section 19(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par.

138.19(b)). In addition to all necessary medical, surgical, and hospital expenses, the arbitrator ordered respondent to pay for all treatment necessary for claimant's physical, mental, and vocational rehabilitation pursuant to section 8(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)). Both parties sought review by the Commission, which also found that the claimant was temporarily totally disabled and entitled to vocational rehabilitation. The Commission increased the period for which benefits were payable to 113$^{2}$/7 weeks, and its decision was confirmed by the circuit court of Macon County. Respondent appeals directly to this court pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

The evidence presented at the arbitration hearing consisted of claimant's testimony, medical reports prepared by Dr. Lewis Adkins and Dr. Alain Menguy, and the evidentiary depositions of Dr. Joseph Ankenbrandt and Dr. Carlo Scuderi. On November 27, 1978, claimant fell three to four feet from a scaffold into a ditch, striking a metal barrel with the lower part of his back as he landed. Claimant experienced severe pain in his lower back, hips and the upper part of his legs. Dr. Adkins, who was claimant's family doctor, initially prescribed pain medication and muscle relaxants; when this treatment failed to relieve claimant's complaints, Dr. Adkins hospitalized claimant for traction and physical therapy. After approximately one week, claimant was issued a back brace and released.

Because his condition had not improved, claimant was referred by Dr. Adkins to Dr. Menguy, an orthopedic surgeon. In his initial medical reports, Dr. Menguy noted that claimant's movements were restricted. After a myelogram in March 1979 indicated a possible defective disc, Dr. Menguy performed a laminectomy and prescribed post-operative treatment of pain medication and a set of exercises. After examining claimant approxi-

mately once a month from May through November, Dr. Menguy informed claimant on November 12 that he could return to unrestricted work on December 10.

Claimant testified that his condition did not change after surgery, and he suffered continued pain at the time that Dr. Menguy informed him that he could return to work. Because of his pain, claimant was unable to perform more than light household chores and was unable to sleep more than four hours per night. Several months before the hearing, claimant suffered "excruciating pain" when he attempted to lift a 45-pound bale of hay. Although Dr. Menguy had directed claimant to walk up to four miles per day, claimant testified that he was unable to walk more than half a mile because of the pain. At the review hearing held before the Commission in January 1981, claimant testified that his condition had worsened and that he was unable to perform the prescribed exercises as well as he formerly had.

Claimant also presented evidence concerning his occupational history. He testified that he was a construction-grade carpenter and that the foreman's position which he occupied at the time of his injury was not a general supervisory job, but rather required him to work along with the other carpenters. Prior to his employment by respondent, claimant said his two most recent jobs involved climbing and working atop a 375-foot-high scaffold while constructing a power plant, and installing hardwood floors. Claimant also testified that his work had required him to wear a 30-pound tool belt and to assist in moving planks and forms which weighed as much as 200 pounds. Claimant's formal education had terminated when he left school in the ninth grade. Before becoming a carpenter, he served in the armed forces, where he had passed a high school diploma equivalency test; he also had held several factory jobs involving physical labor.

Although claimant continued to pay his union dues for a number of months, he did not return to construction work after he was authorized to do so by Dr. Menguy. As a union carpenter, claimant testified he was not allowed to initiate contact with potential employers. Unless contacted by a former employer, he had to report to the local union hall for work assignments. Claimant did not report to the union hall and did not receive any offers of employment. He indicated, however, that if he had been offered a "nonworking" supervisory position, he would have accepted it. He did secure employment for one and a half days stocking grocery shelves but found the work too painful. He also sought work through an employment agency, applying unsuccessfully for work at a marina and for a job repairing storm doors and windows at a lumber yard. Prior to the arbitration hearing, claimant contacted a vocational rehabilitation center. When testifying before the Commission, claimant stated that he was interested in pursuing a recommendation by the center that he become a realtor.

Claimant was examined by Dr. Ankenbrandt in November 1979 and May 1980. On both occasions, Dr. Ankenbrandt observed claimant's range of motion to be impaired, with little improvement by the time of the second visit. Nevertheless, Dr. Ankenbrandt considered the end result of Dr. Menguy's surgery to be excellent, stating that he thought claimant had not fully demonstrated his range of motion. Dr. Ankenbrandt agreed that Dr. Menguy's decision to release claimant to return to carpentry work was appropriate, adding that the vast majority of patients with conditions similar to claimant's could return to unrestricted activities. When questioned by claimant's attorney, however, Dr. Ankenbrandt stated that he thought that scar tissue resulting from surgery had attached to nerve roots in claimant's lumbar spine area. Dr. Ankenbrandt agreed that this condition could

produce pain, but asserted that the degree of impairment demonstrated in his examination of claimant was not enough to interfere with claimant's ability to work as a carpenter.

Dr. Scuderi, who examined claimant in March 1980, found that claimant lacked a normal range of motion and that certain of claimant's back muscles had atrophied from disuse. Although Dr. Scuderi also considered the end result of claimant's surgery to be excellent, the doctor believed claimant "has justification for what he is complaining of." When asked whether he thought claimant was malingering, he responded: "No, I thought he was perfectly honest." While acknowledging that a difference of opinion existed among orthopedic surgeons, Dr. Scuderi stated that the more experienced surgeons believed that persons with claimant's condition were subject to a high risk of recurring injury if they returned to unrestricted activities and that claimant should undertake a more sedentary occupation than that of a carpenter.

Respondent argues that the Commission erred in finding that claimant remained temporarily totally disabled and entitled to vocational rehabilitation following Dr. Menguy's authorization to return to work. Central to respondent's argument is the assertion that in order to determine whether a claimant has fulfilled his burden of proving temporary total disability, we should follow the rule articulated in *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, which allocated the burden of proof in cases involving permanent total disability. We there stated that "if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances." 84 Ill. 2d 538, 546-47.

Instead of finding that claimant was a carpenter, respondent contends that the Commission should have characterized claimant as a supervisory foreman. Respondent, pointing to claimant's failure to report to the union hall or to contact respondent directly about obtaining a position as supervisory foreman, also challenges the Commission's finding that claimant had demonstrated an inability "to obtain employment within his capabilities." In our judgment, however, the Commission's conclusions are not contrary to the manifest weight of the evidence, and do not contravene the *Valley Mould* rule. It is well settled that making factual determinations is a primary function of the Commission and that we will not overturn its findings unless they are contrary to the manifest weight of the evidence. (See, *e.g., Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 467; *United Airlines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85, 95.) There was no evidence that claimant was qualified to work as a supervisory nonworking foreman on the larger construction jobs which employ individuals in such capacities. Too, claimant's unrebutted testimony, which established that he worked primarily as a carpenter required to join in the labor of his pile-driving crew, provided ample evidence for the Commission's finding that claimant was a carpenter.

The necessary result of accepting Dr. Scuderi's testimony, which the Commission apparently did, is that claimant cannot safely return to carpentry work, the trade for which he is best qualified and at which he has spent most of his commercially employed life. Claimant testified that he was trying to arrange for training as a real estate salesman, a type of occupation Dr. Scuderi had approved. While we agree that claimant could have sought employment more diligently than he has, when his lack of qualifications for any occupation other than the one to which he cannot safely return is considered, we believe the Commission's finding that claimant was unable to obtain employment

within his capabilities is not contrary to the manifest weight of the evidence. (*Cf. Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226, 232; *Allis Chalmers Manufacturing Co. v. Industrial Com.* (1974), 57 Ill. 2d 257, 262-63; *Martin Young Enterprises, Inc. v. Industrial Com.* (1972), 51 Ill. 2d 149, 153-54.) Although the medical evidence concerning claimant's capabilities differed, resolving conflicting medical testimony is within the province of the Commission. See, *e.g., Morgan v. Industrial Com.* (1980), 82 Ill. 2d 524, 527; *Inland Steel Coal Co. v. Industrial Com.* (1980), 81 Ill. 2d 61, 65.

We note that the orders of both the arbitrator and the Commission concerning the payment of rehabilitation costs were couched only in the general language of the statute. (See Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).) The record reflects that claimant had not enrolled in a real estate training program or any other course of vocational rehabilitation. Any dispute concerning rehabilitation programs will, of course, properly be the subject of a future hearing before the Industrial Commission. *Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226, 229-30. *Cf. Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489.

The judgment of the circuit court of Macon County is accordingly affirmed.

*Judgment affirmed.*