(Nos. 56536, 56569 cons.—

CATERPILLAR TRACTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Clyde A. Hoshor, Jr., Appellee).

*Opinion filed May 27, 1983.—Rehearing
denied September 30, 1983.*

36

Forrest D. Serblin, of Peoria, for appellant.

Jay H. Janssen, Jerelyn D. Maher, and Kenneth L. Ott, of Peoria, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Clyde A. Hoshor, Jr., filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1

*et seq.*) for injuries arising out of and in the course of his employment with Caterpillar Tractor Company (Caterpillar) in East Peoria. Following three hearings, an arbitrator for the Industrial Commission awarded him 200 weeks of lost time benefits, which represents 40% permanent partial disability, $60 for medical expenses to purchase support stockings, and 125 weeks of temporary total disability benefits. The Industrial Commission affirmed the arbitrator's finding that the claimant had sustained an accidental injury relating to his employment, affirmed the award of 125 weeks of temporary total disability benefits, but set aside the arbitrator's award of 40% permanent partial disability. Instead, the Commission ordered Caterpillar to provide the claimant with physical and mental rehabilitation.

After the circuit court of Tazewell County confirmed the decision of the Industrial Commission, Caterpillar appealed from the Commission's finding that a causal connection existed between the accident and the claimant's injury. The claimant appealed from the provision of the Commission's order which vacated the award of permanent partial disability. These appeals have been consolidated for our review on direct appeal to this court under Rule 302(a) (73 Ill. 2d R. 302(a)).

The claimant testified that he went to see Dr. William Mosiman, his family physician, on December 2, 1975, concerning lower abdominal pain and a backache which the claimant had been experiencing for several days. Dr. Mosiman prescribed medication, and the claimant returned to work. The next day, December 3, 1975, the claimant was operating a buffing machine when a piece of the spinning buffing pad, which weighed about two ounces or less, broke loose and hit him on the left side of his abdomen slightly above the belt line. The impact left a slight abrasion which began to scab the next day and healed within a few days. The claimant did not seek first-aid treatment, but he informed a trainee foreman of the occurrence. He

finished his shift and continued to work for the next week.

On December 13, 1975, the claimant reported to Caterpillar's first-aid office complaining of back pain. He did not relate his pain to a work injury. On December 15, he again saw Dr. Mosiman, and the next day he was admitted to Proctor Community Hospital to determine the cause of his back and abdominal pain. Intravenous pyelograms revealed the existence of a tumor-like enlargement in the claimant's retroperitoneal space, which is located behind the peritoneal cavity, which contains the large interior organs of the abdomen. Dr. Stuart Roberts, a surgeon, evacuated a hematoma from the claimant's retroperitoneal space on December 26, 1975. The pathologist's report did not reveal evidence of a malignancy. On February 22, 1976, the claimant was again hospitalized for edema in his left leg. Dr. Roberts performed a second surgical operation on March 9, 1976, which resulted in the removal of a benign fibrous tissue and a benign lymph node from the claimant's inferior vena cava, the main vessel returning blood from the lower extremities. Additionally, Dr. Roberts also removed adhesions in the same area which had been causing a small bowel obstruction. After the second operation when malignancy had finally been eliminated as a cause, Dr. Roberts questioned claimant about a trauma. Claimant then told the doctor for the first time about the incident at work.

On November 17, 1976, the claimant was released for work by his doctor and returned to work at Caterpillar. Because of the existence of edema in his legs, he was assigned to train as a power-truck operator, which would enable him to sit during work. After one day, however, he did not return to this position because he claimed his legs throbbed and he was unable to perform the job. The claimant's present medical problems, which allegedly stem from the accidental injury, are bilateral varicose veins and mild swelling of the legs.

Testifying for the claimant, Dr. Roberts said that the in-

dustrial accident of December 3, 1975, probably caused the hematoma in the retroperitoneal area. He ruled out a spontaneous occurrence, because of the absence of certain conditions that would usually accompany such an occurrence. He also noted that spontaneous hematoma is unusual in a young, healthy boy. The hematoma, moreover, was localized in an area which precisely corresponded to the spot on the claimant's abdomen which was struck by the buffing pad. Dr. Roberts concluded that the cause of the hematoma was the trauma to the abdomen, regardless of how minor the blow might appear to have been.

Dr. Roberts classified the blow received in the accident as a blunt trauma, since the buffing pad did not penetrate the abdomen. Although the piece of the buffing pad weighed two ounces and could not have exerted significant force, Dr. Roberts said it was not unreasonable to conclude that the trauma was the cause of the retroperitoneal hematoma. He had observed from actual practice that an apparently insignificant trauma which occurs without recognition is often proved to be a satisfactory explanation of the cause of an abdominal hematoma.

Dr. Roberts testified that the hematoma could not have preexisted the industrial accident. When examined by Dr. Mosiman on December 2, 1975, the claimant had an elevated white blood count. Upon admission to the hospital on December 16, 1975, the claimant also had a high white blood count, but it was not as high as on December 2, 1975. A high urinary white blood count indicates a urinary tract infection, but a hematoma which affects the urinary tract would result in the existence of red blood cells rather than an elevated white blood count. This indicates that the trauma to the abdomen which occurred on December 3, 1975, did not cause the elevated white blood count. In this case, the hematoma was culed and was not infected. Since it was not infected, it could not have caused an elevated white blood count. The backache and lower abdomi-

nal pain which were experienced by the claimant prior to the accident are frequently symptomatic of a urinary tract infection. For these reasons, Dr. Roberts concluded the hematoma did not antedate the industrial accident.

On cross-examination, however, Dr. Roberts stated that the retroperitoneal area would ordinarily be protected from a blow to the abdomen by an object that only weighed two ounces. Since a blow from a two-ounce object does not exert much force, the abdominal wall and bowel area would protect the retroperitoneal space.

Dr. Roberts testified that although a spontaneous retroperitoneal hematoma is unusual, it could spontaneously occur without the presence of a trauma. He admitted that the backache and lower abdominal pain which had been reported by the claimant to Dr. Mosiman a day prior to the industrial accident could suggest the presence of a retroperitoneal hematoma. However, he believed that the presence of a urinary tract infection provided the better explanation of this pain. Because of these statements, the employer contends that Dr. Roberts' testimony is equivocal about whether the claimant's work injury caused the growth in the retroperitoneal space.

Dr. Robert Pflederer, who testified on behalf of Caterpillar, reached a different conclusion from Dr. Roberts. Dr. Pflederer, an internal medicine and nephrology specialist, concluded that a spinning projectile which only weighed several ounces, such as a buffing pad, could only cause an abrasive trauma upon impact, not a blunt one. He concluded, therefore, that the buffing pad could not have exerted sufficient force to push back the abdominal walls and the bowels thereby causing damage in the retroperitoneal space. Dr. Pflederer based this opinion on the theory that a superficial, nonpenetrating wound to the surface of the abdominal area is so far removed from the retroperitoneal space that it would be impossible for it to cause a retroperitoneal hematoma.

Further testifying, Dr. Pflederer stated that the retroperitoneal space is well protected. It is not located in the abdominal area but, rather, is behind the peritoneal cavity. If a blunt trauma were the cause of this hematoma, it would be necessary for the trauma to have been sufficiently severe to tear blood vessels and injure tissue. Although a person who is thrown from an automobile or falls from a high building might receive sufficient impact to cause such an injury, Dr. Pflederer concluded that the superficial abrasive trauma which was suffered by the claimant would not be sufficient.

Dr. Pflederer noted that claimant's symptoms were present for five days prior to his accident at work. He reasoned that if there were an underlying abnormality, and a trauma superimposed on it, evidence of this condition would exist at the site of the trauma. Instead, the wound scabbed and healed. No bleeding abnormalities occurred and no discoloration in the superficial skin and muscle areas of the abdomen appeared. Under these circumstances, Dr. Pflederer concluded that the contention that the trauma caused bleeding and damage of tissue in the retroperitoneal space "doesn't fit."

Dr. Pflederer also noted that back pain is often associated with a retroperitoneal hematoma. It is, therefore, significant that the claimant had back pain prior to the industrial accident. Retroperitoneal hematomas often occur spontaneously and are typically described as idiopathic. They frequently result from a tumor or neoplastic process which occurs somewhere else in the body. Dr. Pflederer concluded, therefore, that the disability did not result from a work-related injury, but was instead from a preexisting disease.

It seems highly unlikely that the slight impact from the two-ounce fragment of the buffing pad could cause claimant's injury. Dr. Roberts, himself, testified that the impact from the buffing pad would probably be slight. The claim-

ant did not associate the buffing pad incident with the hematoma until after the doctors questioned him about any possible trauma. Logic would seem to support Dr. Pflederer's opinion that such a slight impact could not have been the cause of the hematoma. However, Dr. Roberts, in a somewhat equivocal manner, stated that he thought the impact from the buffing pad could cause the injury. Furthermore, the Industrial Commission found that there was a causal connection between the work-related accident and claimant's condition. Under the well-accepted principles announced by this court on many occasions, we cannot say that this determination is against the manifest weight of the evidence.

The Commission is the judge of the credibility of the witnesses and the weight to be given to their testimony. It is for the Commission to decide which of the two conflicting medical opinions given in this case is to be accepted. This is true even though the testimony of one of the doctors may have been equivocal. Also, the Commission is at liberty to attach more credence to the testimony of the treating physician than to the testimony of one who merely expresses an opinion based on a hypothetical question. (*International Vermiculite v. Industrial Com.* (1979), 77 Ill. 2d 1, 3; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18; *Riteway Plumbing v. Industrial Com.* (1977), 67 Ill. 2d 404, 408.) Under these accepted principles, it was the Commission's prerogative to accept Dr. Roberts' testimony and to give it weight and to reject the opinion of Dr. Pflederer. The Commission having done so, its decision is not manifestly erroneous.

The fact that Dr. Roberts, at one point, couched his opinion as to causation in language such as "it is reasonable to presume" does not deny the Commission the right to consider his opinion. In reading Dr. Roberts' entire testimony, it is plain that it was his opinion that however slight the impact may appear to have been, it, nonetheless, was

the cause of the hematoma. Although, at times, he was equivocal, his entire testimony reflects this to be his opinion. His testimony therefore was not speculative or inconclusive. We conclude that the opinion which Dr. Roberts expressed on direct examination that the industrial accident caused the retroperitoneal hematoma satisfied the claimant's burden of proof.

We next consider whether the Industrial Commission's determination that the claimant's disability had not reached a permanent condition and its order that Caterpillar should pay for vocational rehabilitation were against the manifest weight of the evidence. The Commission entered an award under section 19(b) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(b)) which affirmed the arbitrator's award of 125 weeks of lost time benefits but set aside the arbitrator's award of 40% permanent partial disability. Instead, the Commission ordered Caterpillar to provide the claimant with physical and mental rehabilitation.

Claimant appealed from that part of the Commission's order which set aside the award for permanent partial disability and which ordered the employer to provide vocational rehabilitation. Claimant contends his condition had stabilized as of May 3, 1978, the date of the last hearing before the arbitrator. He was receiving no active treatment and was taking no medication. Likewise, he had no further appointments with the doctor. His condition had stabilized so far as the permanent nature of his injury would permit. Temporary total disability compensation is to be awarded for the period of time between the injury and the date the employee's condition has stabilized. (*McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198.) Claimant argues that since his condition had stabilized and had not changed as of the date of the last hearing before the arbitrator on May 3, 1978, the arbitrator's award of 125 weeks of temporary total disability (from the date of the injury to the date of the last hearing) was correct.

Caterpillar contends that if there was a causal connection between the accident at work and the claimant's condition, his condition had stabilized as of November 17, 1976, when his doctor released him to return to work and when he did in fact return to work for one day. There may be evidence in the record from which such an inference can be drawn, but there is also evidence in the record that supports the inference that his condition had stabilized as of the date of the last hearing before the arbitrator on May 3, 1978. On the date of the first hearing before the arbitrator (February 8, 1977) claimant testified that he had attempted to go back to work on November 17, 1976, but because of the pain in his legs he could not stand it and did not return to work. He also testified that on that date, although he was not taking any medication, he was still under the doctor's care. On the date of the last hearing before the arbitrator (May 3, 1978) the claimant testified that he was no longer being examined by the doctor and that he had no further appointments with the doctor for the condition of his legs. He also described for the arbitrator the condition of his legs at that time. The award of 125 weeks of temporary total disability by the Industrial Commission is not against the manifest weight of the evidence and should be affirmed. The finding of the Industrial Commission that the claimant's condition has not stabilized is contrary to the manifest weight of the evidence and should be set aside.

The claimant also contends that it was error for the Industrial Commission to enter an award of rehabilitation. We agree. It appears that the claimant did not request that the employer be directed to provide rehabilitation, and there is absolutely no evidence in the record to support such an award. Claimant disclaims any justification or need for such an award under the facts of this case. Considering all of the factors in this case, we find that the award for rehabilitation was contrary to the manifest weight of the

46

evidence. (See *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489.) The judgment of the circuit court of Tazewell County is affirmed in part and reversed in part. The cause is remanded to the Industrial Commission to review the award of the arbitrator for permanent partial disability. In addition to the 125 weeks for temporary total disability heretofore awarded to the claimant, the Commission is directed to enter an award in favor of the claimant for permanent partial disability.

*Affirmed in part and reversed in part;*
*cause remanded, with directions.*