(No. 57566.—

REVERE COPPER & BRASS, INC., Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Betty Copher, Appellant).

*Opinion filed September 23, 1983.*

Scheele, Serkland & Boyle, Ltd., of Chicago (James C. Serkland, of counsel), for appellant.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that on January 19, 1979, while employed by respondent, Revere Copper & Brass, Inc., petitioner, Betty Copher, was exposed to the hazards of an occupational disease and was temporarily totally disabled for 59$^{5}$/$_{7}$ weeks, that her condition was still temporary and had not reached a permanent condition, and awarded compensation under section 19(b) of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1979, ch. 48, par. 172.54(b)). The arbitrator also found that petitioner was entitled to necessary rehabilitation, maintenance and medical treatment under section 8(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)). On review, the Industrial Commission affirmed most of the arbitrator's findings, increased the award to 92$^{5}$/$_{7}$ weeks of temporary total compensation, and remanded the cause to the arbitrator for further proceedings, including a determination of appropriate vocational rehabilitation. On *certiorari*, the circuit court of De Witt County set aside the Commission's decision on the ground that it was against the manifest weight of the evidence. Petitioner appealed. 87 Ill. 2d R. 302(a).

Petitioner started working for respondent in 1967 on a machine making shell liners. She described shell liners as aluminum cans, each of which she was required to handle individually. After working for approximately six months she "broke out" on her hands and was seen by the company doctors. Initial treatment was unsuccessful, and petitioner was transferred by respondent within the plant to keep her away from contact with metals. Following the transfer, and despite treatment by respondent's plant physician, petitioner suffered further skin eruptions. In July 1969, one of respondent's physicians referred petitioner to Dr. Hyman J. Burstein, a derma-

tologist, who saw her intermittently until 1975 and conducted patch tests to determine whether petitioner was allergic to various substances in the plant. The tests did not show petitioner to be allergic to any of the tested substances. Dr. Burstein did not test petitioner for a reaction to nickel.

In October 1975, respondent referred petitioner to Dr. Robert G. Carney, Jr., a dermatologist, who continued to see her until August of 1979. Dr. Carney performed patch testing on petitioner in October of 1977. Petitioner was determined to be allergic to nickel sulfate, cobalt sulfate and chromic sulfate. Dr. Carney also tested petitioner with a sample of stainless steel provided by respondent and obtained no allergic reaction.

Petitioner testified that in January 1979, a fan blew particles onto her, causing her to break out on her legs to such an extent that at the end of her shift she was referred to a local hospital. Because of other physical problems, petitioner did not return to work immediately after this occurrence. On October 18, 1979, on the recommendation of her physician, petitioner saw Dr. Robert Wolf, a dermatologist at the Carle Clinic in Urbana, who recommended that petitioner not return to work in respondent's plant. Petitioner alleges that her disability commenced as of that date.

The order of the Industrial Commission on review included the following findings of fact and conclusions of law:

> "1. Petitioner was a 35 year old general factory worker whose duties required her to handle various stainless steel utensils, one component of which was nickel. Based on the medical reports of Respondent's treating physician, Dr. Carney, and his deposition, in which he indicated that Petitioner was allergic to nickel that will continue to cause eruptions in Petitioner's skin as her life goes on, and the deposition of Dr. Wolf, Petitioner's treating physician, which sup-

ports this opinion, the Commission finds that Petitioner has proved that she was exposed to the hazards of an occupational disease which caused her disability.

2. Based on the testimony of Petitioner, Respondent's treating doctor, and Petitioner's treating doctors that Petitioner should avoid contact with metal, and not return to work where she may come in contact with metals, the Commission finds that Petitioner was temporarily totally disabled to July 28, 1981, the date of Review, and that the $204.58 in medical expenses introduced on Review were necessary to cure or relieve the effects of her exposure to an occupational disease.

3. Petitioner is a high school graduate with no special training or skills, whose work since graduating from high school has consisted solely of that of waitressing and factory work. The Commission finds that because of the open sores on her arm and hand, as noted by the Commission, combined with her allergy to metals, Petitioner is severely limited in the type of work she can perform and has unsuccessfully sought employment within these restrictions. The Commission also finds that Respondent has neither offered Petitioner a job within her capabilities, nor introduced any evidence showing there are jobs available to Petitioner within her capabilities.

Based on the above, the Commission affirms the Arbitrator's finding that Petitioner was exposed to the hazards of an occupational disease on January 19, 1979, is temporarily totally disabled to July 28, 1981, the date of Review, her condition is still temporary under section 19(b), and she is entitled to additional medical expenses of $204.58 submitted on Review and to vocational rehabilitation and maintenance, under section 8(a) of the Act. The Act does not define 'maintenance costs' incidental to such rehabilitation. The General Assembly has determined in section 8(b) the amount of the weekly payment required for temporary total disability in the absence of rehabilitation. There is no proof in this record that the Petitioner requires more or less than this amount for

maintenance at this time.

The Commission further finds this case should be remanded to the Arbitrator for further determination of appropriate vocational rehabilitation pursuant to *Hunter v. Industrial Commission*, docket 53999, filed October, 1981, and for further proceedings pursuant to *Thomas v. Industrial Commission*, 78 Ill. 327, 399 N.E. 1322 (1980)."

The circuit court set aside the decision of the Industrial Commission on the ground that its finding as to causation was against the manifest weight of the evidence.

Petitioner contends that the circuit court lacked jurisdiction to review the decision of the Industrial Commission because respondent failed to file a proper surety bond for approval by the clerk of the court. In view of our reversal of the judgment of the circuit court we need not reach the question of the sufficiency of the bond.

Petitioner contends next that the circuit court erred in holding that the decision of the Industrial Commission was against the manifest weight of the evidence. Petitioner argues that the Commission's decision was supported by the lack of proof of preexisting skin problems, the onset of the condition after exposure to nickel at work, the presence of nickel in the stainless steel utensils handled by petitioner, medical proof of the petitioner's allergic reaction to nickel, and the likelihood that sudden increased exposure to nickel would spark a latent allergy.

Respondent contends that there was no medical evidence to support the Commission's award, as there was no proof that petitioner was specifically allergic to the stainless steel present at respondent's plant. The respondent cites the fact that petitioner did not react to the stainless steel which respondent provided for an allergy test. Respondent argues that the testifying doctors were unable to say unequivocally that the allergic reaction to nickel began at work, home, or somewhere else. Respondent asserts that if her allergy were work-related, petitioner

would not have suffered allergic reactions during periods when she was laid off.

Simply stated, respondent's contention, and the reason for the circuit court's holding that the decision of the Industrial Commission was contrary to the manifest weight of the evidence, is that the medical witnesses conceded the possibility that petitioner's condition might have resulted from a cause other than exposure at her place of employment. In *United Airlines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85, the petitioner was awarded compensation for disability resulting from an allergic condition caused by inhaling jet engine exhaust. In affirming the award this court said:

"Respondent argues in the alternative that claimant has failed to prove that his condition of ill-being arose out of his employment. Respondent contends that the finding of the Commission that claimant's condition was causally connected to his employment is based merely upon speculation, conjecture, or surmise. Respondent asserts that the record is silent as to what substance or chemical irritant claimant had been exposed to and that the decision of the Commission is therefore against the manifest weight of the evidence.

We agree with respondent that the burden is upon the party seeking an award to prove by a preponderance of credible evidence the elements of his claim, particularly the prerequisite that the injury complained of arose out of and in the course of his employment. (*Illinois Institute of Technology v. Industrial Com.* (1977), 68 Ill. 2d 236, 246.) It is also true, however, that it is within the province of the Industrial Commission to determine disputed questions of fact, to draw inferences from the evidence, and to resolve questions of causal relationship based upon conflicting medical testimony, and a reviewing court will not disturb the finding of the Commission unless it is against the manifest weight of the evidence. *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 30." 81 Ill. 2d 85, 96.

We will not reject reasonable inferences of the Commis-

sion merely because we might have drawn a contrary inference on the particular facts of a case. (*International Harvester v. Industrial Com.* (1982), 93 Ill. 2d 59, 65.) The record contains a sufficient basis for the decision of the Industrial Commission. We hold that the decision of the Commission was not contrary to the manifest weight of the evidence, and in reversing it the circuit court erred. For the reasons stated, the judgment of the circuit court is reversed, and the award of the Industrial Commission is reinstated.

*Judgment reversed;*
*award reinstated.*