JAMES CONNELL, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Hoekstra Heating Company, Appellant).

First District (Industrial Commission Division)   No. 1—87—1660WC

Opinion filed May 11, 1988.

Wiedner & McAuliffe, Ltd., of Chicago (Paul W. Wiedner and James S. Smith, of counsel), for appellant.

Horwitz, Horwitz & Associates, Ltd., of Chicago (Mitchell W. Horwitz and Marc A. Perper, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Following an emergency hearing, the arbitrator found that the respondent, Hoekstra Heating Company, was not obligated to pay the petitioner, James A. Connell, temporary total disability benefits (TTD) beyond the 188³/₇ weeks already paid. The arbitrator denied the petitioner's request for a rehabilitation plan and his petition for penalties.

The Industrial Commission, with a partial dissent by one commissioner, found that the petitioner was entitled to TTD from August 18, 1981, through August 28, 1985, or 210²/₇ weeks. The Commission affirmed the remainder of the arbitrator's findings, though excluding certain evidence introduced by the respondent.

The circuit court held that the Commission's decisions on TTD, rehabilitation and penalties were against the manifest weight of the evidence. The court ordered the respondent to pay TTD through January 28, 1986, the last day of the arbitration hearing, and remanded the cause for determination of penalties and a rehabilitation plan. The respondent appeals.

The record shows that on August 17, 1981, while installing an air conditioner as part of his employment with the respondent, the petitioner tried to move the 2,500-pound unit using a board as a lever. The board snapped, resulting in back injuries to the petitioner. During the next four years, the petitioner saw a number of physicians and was operated on twice. In February of 1983, Dr. Sherman Gilreath and Dr. Arthur Connor performed on the petitioner a lumbar laminectomy with bone grafting and internal fixation. The petitioner reentered the hospital on May 2, 1984, for further surgery necessitated when four hooks on the Harrington rods in his back dislodged.

On July 15, 1985, Dr. Warren Clohisy examined the petitioner at the respondent's request. Dr. Clohisy concluded that the petitioner could perform a full-time sedentary job with sitting, standing and walking, but no repeated bending, kneeling, climbing or pushing. Dr. Clohisy further restricted the petitioner to a 10-pound weight lifting limit.

On July 25, 1985, the respondent terminated its TTD payments. The respondent later admitted in a brief that it did not provide the petitioner with the results of Dr. Clohisy's examination until December 10, 1985. On August 27, 1985, Dr. Connor released the petitioner to perform light-duty work requiring no more than 30 pounds lifting or two hours sitting, and no repeated bending, lifting or extended walking.

The petitioner sought work with the respondent on August 29, 1985, but was told none existed within his restrictions. He subsequently filed a section 19(b—1) petition for an emergency hearing under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1)).

The petitioner testified at the hearing that after graduating from high school he had spent three years in the Army, where he first repaired helicopters, then supervised incoming and outgoing shipments at a supply depot. After leaving the Army, he worked as a machine operator. He then got a job as an expediter, a position similar to a stock controller. The petitioner's next employment was with the respondent, where he was trained and employed as an installer and repairer of heating and air conditioning equipment. At the time of the

accident he was 31 years old.

The petitioner further testified that after August 29, 1985, he contacted 71 employers. Many were not hiring. Others were seeking skills he did not have. He had filled out some job applications, but did not yet have any offers.

Susan Entenberg, a vocational rehabilitation counselor who evaluated the petitioner, testified at the emergency hearing that the petitioner was an excellent candidate for on-the-job training. Entenberg testified that with proper guidance he could be placed in a job which would bring him back to his previous earning level. She stated that he had already proved his ability to work in a skilled occupation. He also had performed well on a battery of physical and mental skill tests. She further testified that the petitioner was not, however, interested in formal classroom training. Given these factors, Entenberg opined that the petitioner needed a rehabilitation program primarily consisting of counseling to help him accept the fact that he could never return to his prior work; testing to determine his vocational aptitudes; and guidance to direct him toward employers and employment which would return him to his preinjury earning level. Entenberg stated that she was trying to place the petitioner in a job training program connected with the Illinois Department of Rehabilitation Services.

Over the petitioner's objection, the arbitrator let the respondent introduce into evidence the testimony of private investigator William Kizorek. While in the respondent's employ, Kizorek had secretly filmed the petitioner on November 11, 1985. The film, which was shown at the arbitration hearing, showed the petitioner and two other men buying some duct work and leaving a heating and air conditioning supply house with a box marked "furnace." It was not clear on the film, nor did Kizorek know, whether the petitioner helped carry the box or whether a furnace was actually in the box.

The arbitrator found that the petitioner was entitled to only the 188$\frac{3}{7}$ weeks of TTD which the respondent had already paid. He calculated the TTD period to run from August 17, 1981, through August 11, 1985. The arbitrator further ruled that the petitioner did not need rehabilitation and was not entitled to penalties under sections 16, 19(k) or 19(l) of the Act. Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(k), 138.19(l).

On review, the Commission ruled that the petitioner was temporarily and totally disabled from August 18, 1981, through August 28, 1985, for a total of 210$\frac{2}{7}$ weeks. The Commission agreed with the arbitrator's findings on rehabilitation and penalties. It further ruled, however, that the arbitrator had erred in allowing the respondent to

introduce Kizorek's testimony and the film. The Commission based its ruling on the respondent's failure to either disclose this evidence prior to the emergency hearing or show good cause for not doing so.

Commissioner Ted Black, Jr., filed a partial concurrence and dissent, stating that he found the petitioner was temporarily and totally disabled through the last day of arbitration, which was January 28, 1986. He also found that the petitioner was entitled to attorney fees under section 16 of the Act and additional compensation under sections 19(k) and 19(l).

On appeal, the circuit court held that the Commission's decisions regarding TTD, rehabilitation and penalties were against the manifest weight of the evidence. The court awarded the petitioner TTD through January 28, 1986, and remanded the cause for calculation of attorney fees and additional compensation under sections 16, 19(k) and 19(l), as well as for development of a rehabilitation program. The court confirmed the Commission's decision to bar admission of the investigator's evidence.

The respondent first argues on appeal that the circuit court erred in holding that the Commission's denial of rehabilitation was against the manifest weight of the evidence.

Section 8(a) of the Act provides that the employer shall pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee. Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a).

Industrial Commission Rule 7110.10(a) further provides:

"The employer or his representative, in consultation with the injured employee and, if represented, with his representative, shall prepare a written assessment of the course of medical care, and, if appropriate, rehabilitation required to return the injured worker to employment when it can be reasonably determined that the injured worker will, as a result of the injury, be unable to resume the regular duties in which he was engaged at the time of injury, or when the period of total incapacity for work exceeds 120 continuous days, whichever first occurs." 50 Ill. Adm. Code 7110.10(a) (1985).

In *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672, the Illinois Supreme Court noted a number of factors to consider in determining whether rehabilitation is appropriate. Factors favoring rehabilitation include: (1) the employee has sustained an injury which caused a reduction in earning power and there is evidence rehabilitation will increase his earning capacity; (2) the employee is likely to lose job security due to his injury; and (3) the

employee is likely to obtain employment upon completion of rehabilitation training. Factors mitigating against rehabilitation include: (1) the employee has unsuccessfully undergone similar treatment in the past; (2) the employee has received training under a prior rehabilitation program which would enable him to resume employment; (3) the employee is not "trainable" due to age, education, training and occupation; and (4) the employee has sufficient skills to obtain employment without further training or education. Other factors the court considered relevant were the relative costs and benefits to be derived from the program; the employee's work-life expectancy; his ability and motivation to undertake the program; and his prospects for recovering work capacity through medical rehabilitation or other means. *National Tea Co.*, 97 Ill. 2d 424, 454 N.E.2d 672.

■■ In the instant case, other than the medical records, the only evidence concerning the petitioner's need for rehabilitation came from the petitioner and Susan Entenberg. The petitioner testified that he had not made any vocational goal decisions. He further stated that he wanted to work with a rehabilitation counselor.

Entenberg testified that while the petitioner would never return to his prior occupation, he was capable of performing other "competitive" employment and was a candidate for vocational rehabilitation. Entenberg opined that the petitioner did not have all the skills he needed to start a new job. Having noted that he was not interested in formal classroom education, she stated that she hoped to place him in a job training program connected with the Illinois Department of Rehabilitation Services. She also planned to help him identify specific types of viable job prospects in which he could be competitively employed. She thought in the petitioner's case it would be best if he conducted his own job search.

The Commission concluded that the petitioner did not require rehabilitation. In reaching this conclusion, it specifically noted that Entenberg had testified that the petitioner did not need her services and that Dr. Connors was of the opinion that the petitioner did not need rehabilitation. Having examined the record, we find that neither statement is accurate. As noted, Entenberg specifically testified that the petitioner needed rehabilitation. Dr. Connors released the petitioner for light work, but gave no opinion about the need for vocational rehabilitation.

The Commission appears to have based its decision on the fourth mitigating factor listed in *National Tea Co.* None of the other mitigating factors is present in this case and all of the favorable factors are present. As for the fourth mitigating factor, that the employee has

sufficient skills to obtain employment without further training or education, its applicability is questionable as there was unrebutted evidence that the petitioner had contacted 71 employers after being released for work on August 27, 1985, but had yet to find a job.

Noting that Dr. Connors actually offered no evidence regarding the petitioner's need for rehabilitation and that when Entenberg's testimony is read in context it seems clear that she believed the petitioner needed rehabilitation, we find insufficient evidence in the record to support the Commission's decision. Further, we find that section 8(a) of the Act does not limit rehabilitation to formal training and is flexible enough to include career guidance of the type Entenberg proposed. Accordingly, we hold that the circuit court properly ruled that the Commission's denial of rehabilitation was against the manifest weight of the evidence and the court properly ordered the cause remanded for determination of a rehabilitation plan.

■ The respondent's second argument on appeal is that the circuit court erred in holding that the Commission's denial of TTD after August 28, 1985, was against the manifest weight of the evidence.

Temporary total disability benefits generally are available only until an injured employee has recovered as fully as the nature of his injury permits. (*Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 413 N.E.2d 390.) However, even where an employee's physical condition has stabilized, he may still be entitled to "maintenance" under section 8(a) of the Act while he is in a prescribed rehabilitation program. (*National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672.) Such maintenance is often merely a continuation of TTD. See *Revere Copper & Brass, Inc. v. Industrial Comm'n* (1983), 97 Ill. 2d 388, 454 N.E.2d 657.

■ Based on our decision that the petitioner is entitled to rehabilitation, we find that the circuit court properly ruled that he is eligible for continued TTD. We clarify the court's ruling, however, to reflect that the petitioner is only eligible for TTD until the start of the rehabilitation program. During the rehabilitation period he is eligible for maintenance. We therefore remand the cause for determination of the proper amounts of TTD and maintenance in conjunction with the formulation of a rehabilitation plan.

■ The respondent's third argument on appeal is that the circuit court erred in holding that the Commission's denial of the petitioner's request for penalties was against the manifest weight of the evidence.

Section 16 of the Act provides for assessing the claimant's attorney fees to the employer when the employer has unreasonably failed to pay all compensation due the claimant. Sections 19(k) and 19(l) sim-

ilarly provide for additional compensation payments to an employee as punishment to an employer who has unreasonably failed to pay.

Illinois courts have refused to assess penalties under sections 16, 19(k) and 19(l) where the evidence indicates that the employer reasonably could have believed that the employe was not entitled to the withheld compensation. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) The employer bears the burden of proving the objective reasonableness of its belief. (*Board of Education*, 93 Ill. 2d 1, 422 N.E.2d 861.) The test for penalties is whether the employer's conduct and reliance on medical opinion to contest liability is reasonable under the circumstances presented. (*Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 456 N.E.2d 847.) This is a factual question for the Commission. (*McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 437 N.E.2d 617.) However, even where the employer shows a reasonable basis for having discontinued TTD, its failure to inform the employee in writing before the last TTD payment of its reason for terminating TTD is a factor to consider in awarding penalties. 50 Ill. Adm. Code 7110.70(b), (e) (1985).

■ Viewing the record as a whole, we find that the medical evidence, including Dr. Clohisy's finding that there was no indication of a need for further treatment, supported a conclusion that the petitioner's condition had stabilized. It was therefore reasonable for the respondent to conclude that the petitioner was no longer entitled to TTD. However, we further find that the respondent's act of terminating TTD without providing the proper notice to the petitioner under Commission Rule 7110.70(b) conflicts with the respondent's contention that its actions were in good faith. Accordingly, we hold that attorney fees under section 16 and additional compensation under sections 19(k) and 19(l) were properly awarded to the petitioner for the period from July 25, 1985, when the respondent terminated TTD without providing a written explanation to the petitioner, through August 27, 1985, when the petitioner became aware he was released for light-duty work. We further find that the circuit court erred in assessing penalties after August 27, 1985.

■ The respondent's fourth argument on appeal is that the circuit court erred in affirming the Commission's ruling excluding William Kizorek's testimony and film.

The record shows that on December 6, 1985, the respondent filed its response to the petitioner's emergency hearing petition. On December 23, 1985, the emergency hearing commenced. On January 8, 1986, following the petitioner's testimony, the respondent notified the

petitioner and the arbitrator that it intended to call William Kizorek as a witness. Kizorek was a private investigator whom the respondent had hired to film the petitioner's daily activities. The arbitrator ordered the respondent to provide the petitioner with a copy of the film, which it did. On January 23, 1986, Kizorek testified and showed his film.

The Commission excluded Kizorek's testimony and film because the witness was not disclosed on the respondent's written response to the emergency petition. The circuit court confirmed the Commission's decision.

Section 19(b—1) provides in part:

"No document or other evidence not previously identified by either party with the petition or written response, or by any other means before the hearing, may be introduced into evidence without good cause." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1).

We find that the Commission properly excluded the evidence. The respondent claims that it was surprised by the petitioner's claim he could not work. The very fact that the respondent had an investigator film the petitioner's activities demonstrates, however, that it was anticipating he might claim that he could not work. More importantly, the respondent possessed the filmed evidence prior to filing its written response and did not show good cause for failing to identify it prior to commencement of the hearing.

The judgment of the circuit court of Cook County regarding rehabilitation is affirmed. The circuit court's decision on temporary total disability is affirmed for the period prior to the start of rehabilitation and modified to provide maintenance during rehabilitation. The circuit court's award of penalties through August 27, 1985, is affirmed; the award of penalties for the period thereafter is reversed.

Affirmed as modified.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.