AMERICAN INSULATED STRUCTURES, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Gerald Meredith, Appellee).

Fourth District (Industrial Commission Division)   No. 4—92—0824WC

Argued September 21, 1993.—Opinion filed February 1, 1994.

Jeanmarie Calcagno (argued) and Gregory G. Vacala, both of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Roger E. Ryan (argued), of Springfield, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Gerald L. Meredith, a construction laborer, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 et seq.) for injuries he sustained to his right ankle while employed by American Insulated Structure (Amer-

ican) on an asbestos-abatement project at the Illinois Attorney General's Building in Springfield. Meredith had worked in construction since 1969 and had worked at American from November 13, 1987, until February 23, 1988, the date of his accident.

On February 23, 1988, Meredith was carrying bags of wet debris down an outside staircase when he slipped on a patch of ice and fell down several steps, twisting his right ankle. After reporting the accident to his superintendent, Meredith was taken to the emergency room at Memorial Medical Center. His ankle was wrapped and he was told to see a doctor in one week if his condition did not improve. When it did not, Meredith saw Dr. Clifford Lynch, an orthopedic surgeon, on March 1, 1988. Meredith told Dr. Lynch that he had experienced difficulty with his right ankle dating back to 1968 when he had suffered a twisting injury to it. Dr. Lynch opined that Meredith had early degenerative osteoarthritis involving the ankle as well as a sprain. Dr. Lynch X-rayed Meredith's leg and gave him an elastic support to wear. Meredith saw Dr. Lynch again on March 8, 1988, at which time Dr. Lynch released him to return to work.

Meredith related this to Julie Carroll, the insurance adjuster for Cigna Property and Casualty Company (Cigna), and she suggested he see another doctor. Meredith then saw Dr. Rupert Winston, a podiatrist. After four treatments without improvement, Carroll suggested Meredith see yet another doctor. Meredith then saw Dr. Nicholas Ruvarik, who treated Meredith until Cigna assigned the case to its subsidiary, Intracorp. Carroll then arranged for Mary Watts, a rehabilitation nurse, to visit Meredith. Watts met with Meredith and took a medical, education, and work history from him. Watts told Meredith that Carroll wanted him to be examined by another doctor, so Watts arranged an appointment with Dr. James Strickland for October 14, 1988. In a letter dated October 18, 1988, Dr. Strickland stated that upon examination, Meredith complained of aching and tenderness of his right ankle. Dr. Strickland also noted that Meredith had a previous ankle injury which he described as "quite severe" and that it apparently was not treated. Dr. Strickland concluded that Meredith's accident had aggravated a preexisting degenerative arthritic condition. A subsequent CAT scan revealed "an extra bony fragment in the medial aspect of the tibia near the medial malleolus" and "cystic changes in the distal tibia on the medial side."

Dr. Strickland saw Meredith again on November 11, 1988. Meredith complained of aching, intermittent catching, and popping in his ankle. Dr. Strickland also noted signs of "severe tenderness over the medial aspect of the medial malleolar area of the extosis."

On November 29, 1988, Dr. Strickland surgically removed the extosis over the medial aspect of the right distal tibia and performed a diagnostic arthroscopy, removing several loose chondral bodies and one large osteochondral body.

Dr. Strickland provided follow-up care until June 19, 1989, and subsequently referred Meredith to the Spine Center in Springfield for work-hardening therapy. The staff there evaluated Meredith and recommended against work hardening because he would not benefit from it, and it would probably exacerbate his symptoms.

Dr. Strickland last saw Meredith on June 19, 1989, at which time he imposed the following permanent medical restrictions: "minimal walking, sedentary job with occasional lifting limited to 50 pounds, no carrying of weight for any significant distance, and patient cannot return to heavy construction labor type employment."

In his report of the medical examination he performed for Cigna, Dr. Strickland indicated that Meredith had aggravated a preexisting degenerative arthritic condition in his right ankle. Between December 2, 1988, and June 23, 1989, Dr. Strickland submitted seven additional reports to Cigna, each of which indicated that the accident was the sole cause of Meredith's condition. After Carolyn Habryl took over as Cigna's adjuster, she wrote Dr. Strickland regarding the causal relationship between Meredith's accident and his condition. Dr. Strickland responded that the sprain had "a significant exacerbating effect on Mr. Gerald Meredith's previous degenerative arthritic changes in his ankle." Dr. Strickland indicated that the surgery was necessitated by the sprain.

Dr. David Fletcher was then hired by Cigna to perform another independent medical examination. Dr. Fletcher examined Meredith on November 3, 1989, and Effie Tennat, a job placement specialist for Intracorp, attended. Dr. Fletcher indicated that based upon his review of the medical records and his examination, Meredith's work-related injury was not related to the previous ankle injuries. Dr. Fletcher opined that even absent the accident, Meredith's degenerative ankle condition would have required surgery.

Meredith received vocational rehabilitation services from Linda Kreuger, a certified rehabilitation counselor employed by the Department of Rehabilitation Services. She testified that it was unlikely that Meredith could obtain a job for which there was a stable job market consistent with his age, education, prior work experience, and training without professional rehabilitation services.

Meredith's petition was filed pursuant to section 19(b) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(b)), and sought temporary total disability (TTD) benefits, approval of his vocational rehabilita-

tion plan, penalties pursuant to sections 19(k) and (*l*) (Ill. Rev. Stat. 1989, ch. 48, pars. 138.19(k), (*l*), and attorney fees pursuant to section 16a (Ill. Rev. Stat. 1989, ch. 48, par. 138.16a). On July 9, 1990, the arbitrator awarded Meredith TTD benefits from the date of the accident, awarded medical· expenses, and approved Meredith's vocational rehabilitation plan and expenses incidental thereto, but denied his request for attorney fees and penalties.

Both parties sought review before the Industrial Commission (the Commission). On October 9, 1991, the Commission affirmed the arbitrator's award of TTD benefits, medical expenses, and the approval of the vocational rehabilitation plan. The Commission also found that American's suspension of TTD benefits was unreasonable and without good cause, and awarded Meredith attorney fees and penalties pursuant to sections 19(k) and (*l*) of the Act. The Commission remanded the cause to the arbitrator for further proceedings.

American's counsel received a copy of the Commission's decision on October 25, 1991. Summons for judicial review was issued 21 days later on November 15, 1991, by the circuit clerk. On January 6, 1992, Meredith filed a motion to quash summons for lack of subject-matter jurisdiction on the grounds that judicial review was not commenced within 20 days and that an appeal bond was not filed by the person against whom the Commission rendered an award. In its response, American asserted that the writ of judicial review was properly filed on November 14, 1991. American also filed a "Motion to Correct Clerk of the Circuit Court's Clerical Error," which asserted that the clerk received the writ for judicial review on November 14, 1991, but did not issue the summons until the following day. American's response also argued that it complied with the bond request of section 19(f)(1) (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(f)(1)), as evidenced by the affidavit of Sam Pappalardo, the vice-president for claims for Cigna. Pappalardo's affidavit averred that American had been dissolved and that Cigna was obligated to pay all awards and judgments.

On March 10, 1992, the circuit court denied Meredith's motion to quash summons, finding that the actual filing was on November 14, 1991, and that American had been dissolved and therefore could not sign the bond. Meredith subsequently filed a second motion to dismiss on the grounds that the Commission's decision was not final and appealable because the rehabilitation award was stated in general terms and required remandment to the arbitrator. On May 26, 1992, the circuit court allowed Meredith's motion and dismissed the cause, and remanded it to the arbitrator.

■ American argues first that the circuit court erred in dismissing its petition for judicial review. We do not agree. Clearly, only final

determinations of the Commission are appealable. (*American Structures, Inc. v. Industrial Comm'n* (1983), 99 Ill. 2d 40, 457 N.E.2d 401.) Where the Commission's decision contains a generalized award for rehabilitation, however, such decision is not final and appealable, and the circuit court is without jurisdiction.

In *International Paper Co. v. Industrial Comm'n* (1984), 99 Ill. 2d 458, 459 N.E.2d 1353, our supreme court held that "decisions of the Industrial Commission which include generalized rehabilitation awards that require further determination as to the extent and nature of such rehabilitation are interlocutory and, therefore, not reviewable by the circuit court." *International Paper*, 99 Ill. 2d at 466, 459 N.E.2d at 1357.

In *International Paper*, the arbitrator awarded the claimant TTD benefits under section 8(b) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(b)), and permanent partial disability (PPD) benefits under section 8(e) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(e)). On review, the Commission found that claimant's condition had not reached a state of permanency and reversed the PPD award. The Commission also increased the TTD award, ruled that claimant was entitled to additional medical expenses and vocational rehabilitation under section 8(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)), and remanded the cause to the arbitrator for rehearing on the question of a vocational rehabilitation award. The Commission's decision was confirmed by the circuit court.

In vacating the judgment of the circuit court and remanding the cause to the arbitrator, our supreme court stated:

"A series of cases decided subsequent to our decision in [*Hunter Corp. v. Industrial Comm'n* (1981), 86 Ill. 2d 489, 427 N.E.2d 1247,] have involved questions regarding vocational rehabilitation. (See generally, *National Tea Co. v. Industrial Com.* (1983), 97 Ill. 2d 424[, 454 N.E.2d 672]; *Revere Copper & Brass, Inc. v. Industrial Com.* (1983), 97 Ill. 2d 388[, 454 N.E.2d 657]; *Caterpillar Tractor Co. v. Industrial Com.* (1983), 97 Ill. 2d 35[, 454 N.E.2d 252]; *C.D. Turner & Sons, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 231[, 449 N.E.2d 836]; *McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213[, 449 N.E.2d 832]; *Zenith v. Industrial Com.* (1982), 91 Ill. 2d 278[, 437 N.E.2d 628].) These cases all proceeded through two levels of judicial review based on decisions of the Industrial Commission which were inherently incomplete. Although vocational rehabilitation awards were granted at the administrative level in all these cases, the rehabilitation orders were all couched in the general language of the authorizing statute[.] (Ill. Rev. Stat. 1977, ch. 48, par. 138(a).) Development of specific plans was left either to the parties or, in three cases

(*McLean Trucking, Revere Copper* and *National Tea*) remanded to the arbitrator to hear further evidence on the vocational rehabilitation award." (*International Paper*, 99 Ill. 2d at 464-65, 459 N.E.2d at 1356.)

Our supreme court went on to state:

"We view, with concern, what appears to be a growing practice of the Commission to routinely order employers to pay for mental, physical and vocational rehabilitation of employees before sufficient evidence is presented to enable the Commission to order a specific plan of rehabilitation. *** If judicial review is allowed before this determination is made, the courts will invariably be faced with piecemeal review of such cases, as litigants dissatisfied with the individualized rehabilitation program repeat the entire administrative and judicial review process. *** The piece-by-piece review process described above can only exacerbate what is already an intolerably long delay." *International Paper*, 99 Ill. 2d at 466, 459 N.E.2d at 1357.

In *Cardox Corp. v. Industrial Comm'n* (1989), 186 Ill. App. 3d 946, 542 N.E.2d 1242, the arbitrator awarded claimant TTD benefits after a section 19(b—1) hearing (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)) and the award was sustained by the Commission. The Commission also found that claimant was entitled to vocational rehabilitation under section 8(a) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a)) and remanded the cause to the arbitrator for further proceedings. Respondent appealed to the circuit court, which dismissed the appeal. The circuit court found that the Commission had issued a generalized order for rehabilitation and left it to the arbitrator to provide a specific plan, and that because "administrative involvement" in the case was still ongoing, it was without jurisdiction. This court affirmed, holding that the rehabilitation order was couched in the general language of the authorizing statute, and was therefore interlocutory and not a final and appealable determination.

American relies heavily on our decision in *F & E Erection Co. v. Industrial Comm'n* (1987), 162 Ill. App. 3d 156, 514 N.E.2d 1147. In *F & E Erection*, we held that an award of TTD benefits under section 19(b) is a final and appealable order, notwithstanding the need to remand to the arbitrator for a determination of permanency. American's reliance is misplaced. *F & E Erection* dealt with the award of TTD benefits pursuant to section 19(b), and our decision was based upon the language of the statute. There was no rehabilitation award. In the present case, however, there was, in addition to TTD benefits, a generalized award for vocational rehabilitation, and it is that award which renders the Commission's decision interlocutory in nature.

American further relies upon *Connell v. Industrial Comm'n* (1988), 170 Ill. App. 3d 49, 523 N.E.2d 1265. In *Connell*, the arbitrator awarded the claimant TTD benefits, but denied his request for a rehabilitation award. The Commission increased the TTD award, but affirmed the denial of the rehabilitation award. The circuit court found the Commission's decision with respect to both the TTD award and the rehabilitation award to be against the manifest weight of the evidence, and remanded the cause for a determination of a rehabilitation plan. Unlike the present case, the Commission did not enter a generalized award for rehabilitation, but rather denied such award. Consequently, the decision was a final and appealable order.

American also places great reliance on *C.D. Turner & Sons, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 231, 449 N.E.2d 836. In *C.D. Turner & Sons*, the arbitrator found that claimant was totally disabled, but that the condition had not yet become permanent. The arbitrator awarded TTD benefits pursuant to section 19(b) and vocational rehabilitation benefits pursuant to section 8(a). The Commission increased the TTD award and affirmed the rehabilitation award. The Commission's decision was confirmed by the circuit court. Although the issue of the finality of the Commission's decision was not raised on appeal, our supreme court noted that the rehabilitation award was couched in the general terms of the statute and indicated that any dispute concerning any rehabilitation programs would be the subject of future hearings.

*C.D. Turner & Sons* was decided prior to our supreme court's decision in *International Paper*, and was one of the cases recognized by the court in *International Paper* as having proceeded through the judicial review based upon decisions of the Commission that were "inherently incomplete," a fact noted by the *Cardox Corp.* court in reaching its conclusion:

> "Like *F & E Erection Co.*, upon which the respondent relies, the award of compensation for temporary total disability in *C.D. Turner & Sons, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 231, 449 N.E.2d 836, was made under section 19(b) of the Act. The decision of the Commission with regard to the award of vocational rehabilitation in that case was described by the supreme court in *International Paper* as 'inherently incomplete' by virtue of the Commission's use of the general language of the authorizing statute and its failure to develop a specific plan for vocational rehabilitation for the claimant. *** Like the award of vocational rehabilitation in *International Paper, C.D. Turner & Sons, Inc.* and *Revere Copper*, the rehabilitation order here was couched in the general language of the authorizing statute, and development of specific

plans was left to others. Accordingly, we hold that the decision of the Commission was interlocutory and not a final appealable determination." *Cardox Corp.*, 186 Ill. App. 3d at 950-51, 542 N.E.2d at 1244.

American also argues that the Commission's decision is against the manifest weight of the evidence. In view of the proposed disposition of American's first argument, we need not, and indeed cannot, address these remaining issues.

■ Finally, we address American's motion to strike in whole or in part Meredith's brief and argument. In its motion, American argues that because Meredith did not file a separate appeal or cross-appeal, he waived his argument that the circuit court erred in failing to dismiss American's petition for judicial review on the grounds that it was not commenced within 20 days. Having disposed of this cause on other grounds, we need not address this argument. American also argues that Meredith included in his brief an abstract of the arbitration proceedings, in violation of Supreme Court Rule 342(b) (134 Ill. 2d R. 342(b)). As the abstract played no part in our decision, we find any error to be harmless. Finally, American argues in its motion that Meredith mischaracterized the circuit court's May 26, 1992, order dismissing judicial review as being on the grounds that the Commission's decision contained a generalized award of vocational rehabilitation benefits. Reviewing the record, we find that Meredith's April 20, 1992, motion to dismiss for lack of jurisdiction was based primarily on the argument that the Commission's decision was not final and appealable because it contained a generalized award for rehabilitation. Meredith's characterization of the circuit court's May 26, 1992, order was both fair and accurate.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and SLATER, JJ., concur.